INDUSTRIAL COTTON OIL CO. v.
LIAL et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1914. On Motion for Rehearing, March 4, 1914.)

1. DEATH (§ 41*)—ACTION BY MOTHER—NECESSARY PARTIES.

Where defendant had settled with the wife and children of a deceased, they were not necessary parties, in an action for loss of support by the mother.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 56, 57, 79; Dec. Dig. § 41.*]

2. PARTIES (§ 80*) — NONJOINDER OF PARTY PLAINTIFF—PLEADING.

Defendant must plead nonjoinder of necessary parties plaintiff.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 123–131, 170; Dec. Dig. § 80.*]

3. MASTER AND SERVANT (§ 217*)—RISKS ASSUMED BY SERVANT.

A servant cannot assume a risk that he does not know about.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

4. MASTER AND SERVANT (§ 265*)—ACTION FOR INJURY TO SERVANT — BURDEN OF PROOF — WARNING AND INSTRUCTING SERVANT.

In an action against a cotton oil company for the death of a servant caused by cotton seed hulls falling upon him and smothering him, the burden was upon plaintiff to prove his allegation that defendant failed to warn the servant as to the danger incidental to the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

5. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—SUFFICIENCY OF EVIDENCE—FAILURE TO WARN.

In an action for the death of a servant caused by cotton seed hulls falling upon him and smothering him, evidence held insufficient to show failure of defendant to warn him of the dangers of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

6. TRIAL (§ 252*)—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—APPLICABILITY TO EVIDENCE.

In an action for the death of a servant caused by cotton seed hulls falling upon him, where there was no direct evidence of contributory negligence, there being no eyewitnesses, and defendant's contention that the servant was asleep not being borne out by the position of the body, the court properly refused to charge on contributory negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

Action by Antonia Gonzales Lial and an-

---

other against the Industrial Cotton Oil Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded. Motion for rehearing overruled.

Baker, Botts, Parker & Garwood, of Houston, Jas. A. Harley, of Seguin, and J. C. Townes, Jr., of Houston, for appellant. H. E. Short and P. E. Campbell, both of Seguin, for appellees.

CARL, J. Antonia Gonzales Lial and her husband, Juan Lial, appellees, sued the Industrial Cotton Oil Company, a corporation, appellant, in the district court of Guadalupe county, to recover damages by reason of the death of Frank Gonzales, an adult son, about January 27, 1913. The petition alleged that Frank Gonzales was shoveling cotton seed in the plant of appellant, and that a high perpendicular bank of seed fell on him and smothered him to death; that he was unfamiliar with the dangers of his employment, and appellant failed to warn him of such dangers; that he was contributing $3 to $4 per week to his mother's support and would have continued so to do; and that he was 23 years of age and his mother 43 at the time of his death. Appellant answered by general demurrer, special exceptions, general denial, and pleas specially of assumed risk and contributory negligence on the part of deceased. The trial resulted in a verdict and judgment for $650 in favor of appellee Antonia Gonzales Lial, and from that judgment this appeal is prosecuted.

[1] The first assignment of error asserts that there was error because the surviving wife and children of Frank Gonzales were not made parties. The petition alleged, and the proof showed, that the appellant had settled with them, and, that being true, they had no interest in the litigation in this cause, and there was no error in this respect.

We are well aware of the rule that all parties having an interest by reason of the wrongful act are necessary parties to the suit. Railway Co. v. Whatley, 76 S. W. 589; Vernon Cotton Oil Co. v. Catron, 137 S. W. 404; Railway Co. v. Le Gierse, 51 Tex. 189; Railway Co. v. Culberson, 68 Tex. 664, 5 S. W. 820. But the petition in this case showed that the appellant had settled with the widow and children. Then what good could come of making them parties? The proof supported the pleadings, and no useful purpose could have been subserved by making the widow and children parties. H. & T. C. Ry. Co. v. Bradley, 45 Tex. 171. If there had been any question that the surviving widow and children had not settled, exception should have been made or proper pleas made by the defendant below, because the petition alleged settlement with her. Dallas, etc., Ry. Co. v. Spiker, 59 Tex. 435, distinguishing March v. Walker, 48 Tex. 372. In Ft. Worth & D. C. Ry. Co. v. Wilson, 85 Tex. 516, 22 S. W. 578, it was sought to defeat a motion for new trial by showing that a necessary party had executed a release, and the court said: "Conceding, as was suggested in the case last referred to, that, if it be shown that the unjoined beneficiary has settled his claim, the judgment may stand, it still does not follow that such an important fact can be established by ex parte evidence, or by affidavits offered in opposition to a motion for a new trial. Such proof should be made during the progress of the trial, under the rules governing the introduction of other evidence, and subject to the valuable privilege of cross-examination."

[2] In the case at bar the fact that the widow and children of deceased were not parties was directly called to defendant's attention, for it is therein shown that they have no interest in the suit. How, then, can it be said that the verdict of the jury was affected by the idea that it was to be brought for the benefit of all those provided for by statute? If the defendant desired them made parties, it became its duty to plead it in some way. The Spiker Case, supra, says that, if the mother had settled her claim, that should have been shown, and the judgment could then stand. The assignment is overruled.

[3] The second, third, and fourth assignments complain of the action of the court in refusing to instruct for defendant. Deceased was set to work where he met his death, and Mr. Baker, the manager, does not claim that he warned the deceased of the danger incident to his work. John Brawley says he did not warn him of such dangers. Mr. Gazelle, the night engineer, seems to have had charge of the mill at night, but his duties were with the mechanical department. Gazelle hired him and put him to work. Deceased had never worked at a place like this before, according to his mother's testimony, and had only been at work there about a week, and just that day at shoveling seed; and the evidence of Brawley and others shows that it was dangerous work. The seed were in a wall varying from 15 to 25 feet high in almost a perpendicular bank. Brawley states that he was put in charge of the seed house at night, and that he did not tell deceased of the danger of the work; but he was not a vice principal. Neither did Mr. Baker, the manager, nor did any of the others who testified, say they warned him. On the contrary, they deny that they did. Baker had no personal knowledge of the employment. Gazelle, having charge of the mill, with power to employ and discharge employés, was a vice principal, and he set deceased to work where he met his death. Deceased was a new hand who had never worked at a business of this kind before, and all of defendant's employés who testified denied warning him of the dangers of the work. A servant cannot be said to assume a risk he does not know about.

[4] The burden is on the plaintiff to show

that deceased was not warned, and has this been done? Can it be done by the introduction of testimony that certain other employés did not warn him? The vice principal was Gazelle, and he hired the man and set him to work. He did not testify on the trial.

The Supreme Court has passed upon a case very similar to this one in Commerce Cotton Oil Co. v. Camp, 105 Tex. 130, 145 S. W. 902: "The plaintiff charged in substance that the cotton oil company, without her knowledge or consent, employed her minor son, Oscar Camp, and set him to work at a dangerous and hazardous employment, and, knowing that Oscar did not understand the risk, failed to warn him of the danger, in consequence of which Oscar was killed by the falling of the cotton seed hulls upon him. The allegations were full; but it is unnecessary to state them more fully here. To recover, the plaintiff was required to prove that Oscar was employed by G. W. Day, the general manager, and the only person for whose negligence the corporation would be liable. Also she must have proved that Day negligently set Oscar to work at a dangerous employment, without informing the boy of the danger." The court reversed and rendered that case.

[5] It is contended that the defendant was negligent in setting deceased to work at a dangerous place without warning him of such dangers. Where is the evidence that Gazelle, the man who hired him and set him to work, did not warn deceased of the dangers? There is none. Gazelle did not testify, and no witness said that he did not warn deceased. The fact that Brawley did not warn deceased is not sufficient. Under the holding in the Camp Case, supra, Brawley's actions could not make the oil mill company liable. The burden is on appellee to show that deceased was not warned, and unfortunately this burden has not been discharged. Judge Brown says: "To the complaint, it is a harsh law, we answer that it was enacted by the Legislature, and this court has no authority to change it. 'Hard cases make bad law.'" It does seem a harsh law that requires appellee to go into the camp of the opposition to get proof, for the lips of Gonzales are sealed, and about the only man from whom this testimony can be obtained is Gazelle, the foreman who employed him. But the law is thus written, and the court of last resort has so interpreted it. Therefore it becomes our duty to reverse the judgment, and, inasmuch as plaintiff may be able to show by Gazelle or otherwise that he did not warn deceased of the dangers, we will remand the cause for trial. Under the decisions referred to, the court would have been justified in giving the requested instructions, but, since the proof may be supplied on another trial, we do not here render.

The fifth assignment complains of that part of the court's charge reading as follows: "A servant assumes the risks of employment provided he knows the danger, or in the ordinary discharge of his own duties must necessarily have acquired the knowledge. So, if you find from the evidence that the defendant knew the danger of working near the bank of cotton seed (if there was such danger), or in the ordinary discharge of his own duties must necessarily have acquired the knowledge of such danger, then he assumes the risks, and the plaintiff would not be entitled to recover; and, if you so find, you will find for the defendant." The objection is that it places a greater burden on defendant than the law requires. In view of another trial, it might be well for the court to observe the rules laid down in Railway Co. v. Kizziah, 86 Tex. 90, 23 S. W. 578, where a similar charge was held to place too great a burden on the defendant.

[6] The court did not charge on the question of contributory negligence. No one saw the accident, and the surrounding circumstances must be looked to in ascertaining how it happened. Defendant below pleaded contributory negligence on the part of the deceased, and sought to show from the position in which the body was found that deceased had sat down and gone to sleep. But the facts do not warrant such a conclusion. It was a mere theory; and, further, the testimony as to how cotton seed slough off is farfetched. Accidents do not follow rules. One man said that cotton seed begin gradually to trickle down from the top in a way to give time to a person to get out of the way. Defendant sought also to show by circumstances that deceased had his back to the wall of seed, and "that if a man were shoveling seed, and it began sloughing, it would commence to fall right down at his feet in front of him; if he were digging it out, it would gradually come right down to him. * * * It might cover him up three, four, or five feet if he would stand right up in front of it and stand there. If a man was leaning back against a pile of cotton seed asleep, and it commenced to slough, it would cover him entirely up." The witness, John Brawley, says he was working there at the time, but did not see the accident; that there was a perpendicular wall of seed from 18 to 25 feet high at the place where Gonzales was smothered to death. "I did not see Frank Gonzales when he met his death, but from digging him out, and the position in which he was, he met his death by the seed sloughing or caving down and covering him up. Frank Gonzales was doing the work that Mr. Gazelle, the night engineer, had told him to do, and was working at the very place that I had instructed him as night foreman. I don't know whether Frank Gonzales ever shoveled seed into a conveyor previous to the night he had met his death, but I know that I had never seen him at that sort of work before." Then: "Shoveling seed into a conveyor where the seed is piled as high as they were on the occasion of Frank Gonzales' death is very dangerous, especially at

night, for the reason that they cannot see when they are going to slough or cave."

Ed Wade helped dig Gonzales out, and he says: "He was standing pretty well straight. He was standing pretty near straight up. He was facing east. The bank of seed was in back of him. He was nearly in a straight position." The idea that Gonzales was asleep is not supported by the facts. The court charged on assumed risk, and the facts did not require a charge on contributory negligence. That Gonzales was asleep was mere surmise and not borne out by the position of the body, which was not controverted by any witness. Courts will not be required to charge upon mere academic questions not supported by substantial facts. The court did not err in refusing to charge on contributory negligence.

What we have said will dispose of the other assignments.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Counsel for appellee, in support of their contention that the burden was on the employer to show that the deceased was warned of the dangers of the employment, have cited Lawson v. Hamilton Compress Co., 162 S. W. 1023, Railway Co. v. Worden, 90 Ark. 407, 119 S. W. 830, and Labatt on Master and Servant, vol. 1, § 291. In these cases injuries to minors were under consideration; and it was the purpose of these authorities to say that, where minority is pleaded and relied on to avoid the assumption of risk, the burden is on the employer to show that, notwithstanding his minority and lack of matured judgment he was warned of the danger. In short, if the minor did not have sufficient judgment to comprehend the danger, this would be overcome by the master showing that he was in fact told of the danger. But even if that rule were as broad as indicated in the Lawson Case, supra, it would have no application to this case because deceased was not a minor.

The motion for rehearing will be overruled.