SOUTHERN PAC. CO. v. VAUGHN.

(Court of Civil Appeals of Texas. El Paso. March 26, 1914. Rehearing Denied April 16, 1914.)

1. MASTER AND SERVANT (§ 270*)—ACTIONS FOR INJURIES—EVIDENCE—NOTICE.

In an action for the death of a railroad engineer, by the explosion of the boiler on April 9th, where a witness testified that he ran the engine in question several times, before the explosion, and that on all such trips the water circulated through the water glass, so that it was unserviceable, and that he reported such condition on the first trip, and on two different occasions on regulation report blanks, and there was other testimony bearing directly on the condition of the water glass from the first part of January to the day of the accident, the testimony as to the condition of the water glass on the occasion of the first trip by such witness in January though remote, was admissible on the issue of notice of the defective condition, there being no evidence that it had been repaired subsequent to such trip.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

2. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action for the death of a railroad engineer, caused by the explosion of the boiler, the admission of testimony as to the defective condition of the water glass on the engine three months before the accident, though remote, was harmless, where another witness testified to the same effect without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

3. MASTER AND SERVANT (§ 267*)—ACTIONS FOR INJURIES—EVIDENCE—INTERSTATE COMMERCE.

In an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), for the death, in Arizona, of a railroad engineer who took charge of an east-bound train at Yuma, Ariz., evidence as to the kind of commodities shipped from Yuma, and that most of the lumber and oil shipped over defendant's lines to the east came from California, was admissible on the issue of whether deceased was engaged

in interstate commerce at the time of the explosion.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 909, 911; Dec. Dig. § 267.*]

4. MASTER AND SERVANT (§ 284*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for the death of a railroad engineer under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) evidence *held* to make a question for the jury as to whether deceased was engaged in interstate commerce at the time of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. § 284.*]

5. TRIAL (§ 139*)—TAKING QUESTION FROM JURY.

To justify the court in taking a question from the jury, the evidence must be such that there is no room for ordinary minds to differ as to the conclusion to be drawn therefrom.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

6. DEATH (§ 99*)—ACTIONS FOR WRONGFUL DEATH—EXCESSIVE DAMAGES.

A verdict for $20,000, under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), apportioned equally between the wife and one minor child, for the death of a railroad engineer 31 years old, in good health, earning about $175 a month, most of which was expended in the support and maintenance of the wife and child, was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Action by Nellie Vaughn against the Southern Pacific Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Beall & Kemp, of El Paso, Baker, Botts, Parker & Garwood, of Houston and Wm. F. Herrin, of San Francisco, Cal., for appellant. Lea & Nagle and McBroom & Scott, all of El Paso, for appellee.

McKENZIE, J. This suit was brought in the district court of El Paso county by Nellie Vaughn, administratrix and personal representative of the estate of Clyde C. Vaughn, deceased, against the Southern Pacific Company, to recover damages for the use and benefit of herself and her minor child, Clyde C. Vaughn, Jr., for the death of said Clyde C. Vaughn, who was her husband, and who was the father of said minor child, and who died on April 9, 1912, by reason of injuries sustained while in the employ of the appellant as a locomotive engineer, said injuries having been caused from an explosion of the boiler of the locomotive which he was operating. Trial was had upon a first amended original petition, it having been filed March 28, 1913, in which it is alleged that Clyde C. Vaughn was employed by defendant as locomotive engineer, operating a freight train between Yuma and Phœnix, both be-

ing in Arizona; that while engaged in interstate commerce, through the negligence of defendant, the boiler to the engine on which he was working as engineer exploded, and blew it up at Stanwix Station, in the state of Arizona, in consequence of which he was killed; that the boiler which exploded was unsafe and unsuitable to be used as such, for the reason that it was old, worn, burned, defective, muddy, dirty, and corroded; that the defendant had failed in its duty to furnish him with a safe engine, boiler, and appliances, and had failed to carefully and frequently inspect the same, and to repair the same and keep it in safe condition, and by reason of said negligence the explosion occurred; that the gauge cocks and water glass on said engine were defective, and did not properly register the amount of water in the boiler, and could not be used by the engineer to ascertain whether or not there was sufficient amount of water in the boiler; that at the time of the said accident, defendant was engaged in interstate commerce, and that said Vaughn was employed on the engine as an engineer, engaged in hauling interstate shipments of freight and merchandise into and through the state of Arizona; that the suit is brought under what is known as the federal Employers' Liability Act and the federal Safety Appliance Act, and the amendments thereto, she alleging that she relied solely on said act for recovery. Defendant answered by general and special demurrers, general denial, a plea of negligence on the part of the deceased in failing to keep the boiler of the locomotive properly supplied with water, and by pleas of contributory negligence and of assumed risk. Trial was had before a jury, and resulted in a verdict and judgment for appellee for the sum of $20,000, apportioned equally between her and the minor child.

[1] Appellant's first assignment of error complains of the action of the trial court in overruling its objection to certain answers to questions of the deposition of M. G. Seeley, a witness for plaintiff, who answered, in response to certain interrogatories, that the water glass on the engine was unserviceable as a guide to the true water level in said engine when he was operating same the first week in January, 1912, the specific objection being that the evidence was too remote. Adverting to the evidence of the witness, we find that he testified in connection with and including the testimony as objected to, as follows: "I had engine 2739 some time previous to the date of the explosion. I have been in charge of the engine and boiler of engine 2739 as a locomotive engineer. I ran engine 2739 four times. First time in the first week in January, 1912, and about one month later ran the engine two trips, from Tucson to Mescal, and in March or April ran engine 2739 from Tucson to Bowie. That is the four trips. The first time I ran engine 2739

was the first week of January, 1912. During this trip the water circulated or rose in the glass in such a manner that I could not tell definitely the location of the water in the boiler. On the trip just referred to the water glass was not a reliable guide. On all four trips where I had engine 2739, the water circulated or bubbled up through the glass to such an extent that it rendered the water glass unserviceable as a guide to the true water level in the boiler. I did report the water glass upon my arrival in Yuma, when I had the engine on the first trip in January, 1912. I also reported the water glass upon two different occasions, when I arrived in Tucson with the engine from trips up the hill; said reports were upon regulation report blanks." True, the testimony in point of time appears to be remote, and the mere statement that the water glass was out of order the first week of January, standing alone, would not perhaps be admissible to prove that it was out of order on April 9th, when the accident occurred; but when the testimony of the witness is considered as a whole, and in connection with other testimony in the record which bears directly upon the condition of the water glass from the first part of January to the day of the accident, we are of the opinion that the testimony was material and admissible as bearing upon the condition and sufficiency of the water glass before and at the time of the accident. It being shown that the water glass was out of order before the accident, the defendant could have shown by testimony that since said time it had been repaired. This it had not shown, the only testimony offered being that of the witness Martinez, who was employed by defendant as hostler, and who testified to the effect that the day before the accident the engine was in the roundhouse at Yuma; that the engine was called for at 1:50 a. m., on April 9th; that he examined the water glass, and it was in good condition, and that the gauge cocks were open. In our opinion the objection urged against the admission of the testimony relates more to its weight than to its competency. We hold that the testimony was admissible upon the general issue of notice, and as effecting the defendant with notice of the defective condition and insufficiency of the water glass.

[2] The testimony was made harmless by reason of the testimony of the witness H. R. Vaughan, who testified without objection, as follows: "As to whether or not the water glass had been giving trouble before that time (April 9, 1912) I had never had any trouble with it. I don't remember how many times I had the engine, but I had it quite a bit in January. I had a little trouble with it in January, when it acted as though the water was light, and raised and lowered, foamy. There was some complaint about the water glass on that engine in January. The water would raise and lower like it was light and foaming." T. & P. Ry. Co. v. Good, 151 S. W. 617; M., K. & T. Ry. Co. v. Reno, 146 S. W. 207; G., H. & S. A. Ry. Co. v. Udalle, 91 S. W. 331. For the reasons indicated we are of the opinion that the assignment of error should be overruled.

[3] Appellant's fourth assignment of error is as follows: "The court erred in overruling defendant's objection to the question propounded by plaintiff's counsel to the witness P. Sheedy, as to where most of the lumber comes from that is shipped over the Southern Pacific lines east, and as to where most of the oil comes from that is shipped over the Southern Pacific lines east; and the court erred in overruling defendant's objection to the answer to said questions that most of the lumber and oil came from California, which was objected to on the ground that the evidence was immaterial and irrelevant, and not tending to prove any issue in the case; and the court erred in overruling defendant's objection to the questions propounded by plaintiff's counsel to the witness P. Sheedy as to what products were raised in and around Yuma, and what commodities were shipped out of Yuma, on the ground that the same was immaterial and irrelevant, and did not prove any issue in the case; and the court erred in overruling defendant's motion in writing to strike out and withdraw from the jury the evidence of the witness P. Sheedy that most of the lumber and oil shipped over the Southern Pacific lines to the East came from California; and the court erred in overruling defendant's motion in writing to strike out and withdraw from the jury the evidence of P. Sheedy as to the kind of products that are grown in and around Yuma, and as to the commodities that are shipped from Yuma, as is shown more fully by defendant's bill of exceptions No. 4." This assignment is first submitted as a proposition and must be overruled, because, in our opinion, the testimony objected to was material to the issue of whether or not the deceased was engaged in interstate commerce at the time of the explosion of the engine. Under "additional proposition under above assignment" appellant contends that: "Plaintiff having failed to introduce any other testimony in connection with that of the witness P. Sheedy, to show that the train in question was engaged in interstate commerce at the time of the explosion, the court erred in overruling defendant's motions in writing to strike out and withdraw from the jury all of the evidence of the witness P. Sheedy, as to where most of the lumber and oil shipped over the Southern Pacific lines east came from, and as to the kinds of products that are grown in and around Yuma." In answer to the proposition we find that there is other testimony bearing directly upon the issue, as will more fully appear from the evidence set out by us in making disposition of the next succeeding assignment of error. The

assignment of error is therefore overruled.

[4] By appellant's fifth assignment of error, complaint is made of the action of the trial court in refusing to peremptorily instruct the jury to return a verdict for it. The requested charge is as follows: "Gentlemen of the jury, plaintiff having failed to show that the engine and train in question, being operated by Engineer Vaughn at the time of the explosion in question, was engaged in interstate commerce, you are instructed plaintiff cannot recover, and are, therefore, charged to return your verdict for defendant." Confining ourselves to the exact point raised by this assignment, in our opinion the evidence is sufficient to sustain the verdict of the jury, and also sufficient to require the court to submit the case to the jury. Patrick Sheedy, a witness for the defendant, testified that he was superintendent of motor power for the defendant company, with his headquarters at Los Angeles, and that his division extended east to the Rio Grande. "That the Southern Pacific Railway runs from San Francisco in California through Yuma, right on the line there and through the state of Arizona, through New Mexico, to the Rio Grande river. * * * If 50 cars were going east from Yuma, it is quite likely the greater portion of them would be brought from California. * * * The Southern Pacific Company carries oil from Bakersfield east; as to where most of the lumber comes from that is shipped over the Southern Pacific lines east, we have several points where lumber is taken in. Lumber shipments going through to the East generally originate at San Pedro, a shipping port on the west coast of California."

The witness Daniel Edward Norton testified that he was fireman on engine 2739 at the time of the explosion; that Yuma is in the state of Arizona on the California line, on the west line of Arizona; that the Southern Pacific Road runs through the states of California, Arizona, and New Mexico. That "Mr. Vaughn and I got on the engine at Yuma, Ariz., going east, moving the train east from California, toward El Paso. It was a freight train. I should judge it to have been of about 50 cars." He further testified that deceased, at the time of the explosion, was in the employ of the Southern Pacific Company as an engineer, and was operating the engine pulling said train at the time of the explosion.

The witness R. H. Vaughan, a witness for defendant, testified: That he was a locomotive engineer in charge of the engine which was pulling the train following the one which was being operated by C. C. Vaughn. That he saw the wrecked train in one hour and a half to two hours after the explosion. That the train that was being pulled by the engine which was operated by the deceased consisted of box cars, oil, and lumber. That: "As to where the oil cars are loaded on the Southern Pacific, they are loaded at different points. I think they got most of the oil in the Bakersfield district in California. I think this is the biggest oil field there or in there. I don't know how many oil cars there were, so couldn't say. I don't know where they get the lumber from in that section of the country. There are no sawmills around Yuma that I know of. There are no other lines running into Yuma, except the Southern Pacific, or its branches; that's all, I believe. There is a branch or two out of there, and they all go into California. This train was going east through Yuma. Yuma is right on the line of California and this state, just this side of the Colorado river, which is the line there."

The witness Martinez testified: "I think the train that this engine was hooked onto came from the west because it was going out to the east."

[5] We are of the opinion, therefore, that the evidence quoted, when taken in connection with the entire transaction, amply sustains the jury verdict, and that the engine and train in question, being operated by Engineer Vaughn at the time of the explosion in question, was engaged in interstate commerce. In the light of the foregoing testimony, we do not think that the court would have been justified in withdrawing the question from the jury. It is well settled that in order to justify the court to take the question from the jury, "the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Choate v. Railway Company, 90 Tex. 82, 36 S. W. 247, 37 S. W. 319. Applying the foregoing test to the instant case, we are of opinion that the assignment of error should be in all respects overruled.

[6] The sixth and last assignment of error complains of the verdict of the jury as being grossly excessive in the amount of damages awarded, and as being caused by the sympathy aroused for the widow, who testified in the case, and who was present during the entire trial with her infant child. It is shown by the evidence that the deceased was 31 years of age, in good health, was earning about $175 per month, most of which was expended in the support and maintenance of his wife and child. No sufficient reason is assigned, in our opinion, why the verdict of the jury should be disturbed, and the assignment of error is therefore overruled.

For the reasons indicated, we are of opinion that no error of a reversible character has been committed upon the trial of the case, and the judgment is therefore affirmed.

Affirmed.