TEXAS & P. RY. CO. v. HOWARD et al.
(No. 1782.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 23, 1918. Rehearing Denied Feb. 14, 1918.)

1. MASTER AND SERVANT ☞276(10)—INJURY TO SERVANT—ACTS WITHIN SCOPE OF EMPLOYMENT—SUPERINTENDENT.
  From the fact that deceased railroad employé, killed by moving cars against standing cars, was superintendent of that division of the road, if it could not be said as matter of law, the jury could at least find that he was acting within the scope of his employment, when on the separation of the train, by a drawhead falling out, he went between cars where switchmen were replacing it, and this though he took hold of it and endeavored to assist them.

2. MASTER AND SERVANT ☞278(18)—INJURY —NEGLIGENCE—SUFFICIENCY OF EVIDENCE.
  Evidence held sufficient to support finding of want of care of engineer, who moved cars against standing cars, where train had separated, killing employé assisting in replacing drawhead.

3. EVIDENCE ☞590—CREDIBILITY—INTEREST OF WITNESS—PARTY CAUSING INJURY.
  Relative to credit to be given defendant's engineer, who testified that he did not see the signals to stop the engine, the jury could consider his interest, by reason of having caused the accident.

4. MASTER AND SERVANT ☞281(2)—CONTRIBUTORY NEGLIGENCE — WEIGHT AND SUFFICIENCY OF EVIDENCE.
  Relative to contributory negligence of superintendent in· going and remaining between standing cars where switchmen were endeavoring to replace a drawhead, which had fallen out, the jury could say that he, when he reached the place, and saw the train, to which the engine was attached, standing still, and the switchmen so working, between the cars, might well have concluded, exercising proper care, that the engineer had been signaled not to move his engine, and would obey the signal.

5. DEATH ☞99(4)—EXCESSIVE DAMAGES.
  Verdict of $17,000 in favor of the only minor child, a girl of 10 years, for death of a widower 57 years old, with a life expectancy of 15½ years, receiving a salary of $3,000 a year, he being devoted to her and being a man

of fine character and exemplary habits, cannot be held excessive.

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Helen Campbell Howard and others against the Texas & Pacific Railway Company. From an adverse judgment, defendant appeals. Affirmed.

March 29, 1904, E. W. Campbell, then superintendent of the Eastern division of appellant's line of railway, was crushed between two cars forming parts of one of appellant's trains then near the Union Depot in Dallas. He died shortly afterwards from the effect of the injuries he suffered, leaving surviving him a daughter, appellee Helen Campbell Howard, then 10 years of age, and a son, R. W. Campbell, then 27 years of age. On the theory that the death of said E. W. Campbell was due to negligence on the part of the engineer in charge of one of appellant's engines, rendering it liable to her and her brother, the daughter commenced this suit for damages by a petition filed October 21, 1915. September 5, 1916, she married appellee R. G. Howard, who became a party plaintiff with her by a supplemental petition filed September 25, 1916. Briefly stated, the circumstances of the accident were as follows: A train consisting of about 20 cars was being moved west on the main line track, when the drawhead of a car near the middle of the train pulled out and fell to the ground, about the point where appellant's track crossed Hawkins street. The effect of this was to separate the train into two parts, as the car from which the drawhead was pulled and those east of it stopped, while the engine and other cars moved on west about 12 feet before they stopped. Kelley and Core, switchmen, at once went to where the drawhead fell, and, having picked it up, were endeavoring to replace it in the car when the deceased went to them. While Kelley and Core were engaged in the work, the deceased assisting them, the engine and cars which had moved west as stated moved east, colliding with the car deceased and Kelley and Core were working with, crushing deceased as stated, and injuring both Kelley and Core. The appeal is from a judgment in favor of Mrs. Howard for $17,000.

F. H. Prendergast, of Marshall, for appellant. S. P. Jones, of Marshall, T. P. Harte, of Douglas, and Mahaffey, Keeney & Dalby, of Texarkana, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] Appellant insists that the deceased was not engaged in the performance of duty he owed to it as its division superintendent at the time he was injured, and that in going between the cars as he did, and assisting Core and Kelley in replacing the drawhead he was performing service outside of the scope of his employment, and that it therefore owed him no duty except the duty not to willfully injure him. The rule of law invoked has been stated as follows:

"If an employé quits the work assigned to him by his employer, and voluntarily undertakes to do work about which he had no duties to perform by virtue of the contractual relations existing between him and his employer, then, while such condition exists, the duty growing out of that relation of using care for his safety does not rest upon the employer." 4 Labatt's Master and Servant, § 1565.

As we view the testimony, if it did not appear therefrom as a matter of law that the rule invoked was inapplicable to the case, it presented a question as to whether the deceased was at the time acting within the scope of his employment or not, which should have been submitted, as it was, to the jury. There was no testimony showing what the deceased's duties were further than might be inferred from proof that he was superintendent of the division of appellant's line of railway, which included the place where the accident occurred, and as such had authority to direct train operatives and power to discharge them. From those facts we think the jury had a right to find that the deceased was acting within the scope of his employment when he went between the cars and remained there as he did. A "superintendent" is "one who superintends or has the oversight and charge of something, with the power of direction." Century Dictionary. We think the jury had a right to conclude that it was the deceased's duty, because he was "superintendent" of the division, to see to it that Core and Kelley without unnecessary delay properly replaced the drawhead, so that the train could be moved and the main line track cleared for another train shown to have been waiting to pass over it. If it was his duty to do that, he had a right, exercising proper care for his own safety, to go to the place from which he thought he could most effectively discharge the duty. As we see it, while the fact that he chose a place between the cars might be important in determining whether he was guilty of contributory negligence or not, it is of no importance in determining whether he was acting within the scope of his employment or not. If the deceased was performing duty he owed to appellant when he went between the cars to superintend the work Core and Kelley were engaged in doing, that he took hold of the drawhead and endeavored to assist them in replacing it, when it was not, it is insisted, his duty to do so, did not, we think, bring him within the rule invoked by appellant.

[2, 3] Appellant further insists that, if the deceased was not in the attitude of a volunteer or mere licensee, and it owed him a duty, under the circumstances of the case to use care to avoid injuring him, there was no testimony to support the finding that it did not use care. It appeared that the train was headed east, and consisted of about 20 cars. It was on the main line track, and was being moved by a switch engine, also headed east, coupled to its west end. The

engineer in charge of the switch engine testified that he was directed by a signal from the switching crew to move the train east, the purpose being to get it out of the way of a work train waiting to pass it from the west. He said he tried to move the train east and could not, and thereupon pulled west 8 or 10 feet to "take slack" to get momentum sufficient to move the train when he reversed his engine and moved it east. He did not know, he said, that the drawhead pulled out when he moved the engine west, leaving part of the train on the east side of Hawkins street, but, believing that in moving west he had only taken up the slack in the train, and not having seen the signals to not move the train which Core and Kelley, the switchmen, testified they gave him, he moved the train east in obedience to the signal to him to so move it. Appellant's contention is based on the testimony of the engineer, just recited, that he had been signaled to move the train east and did not see the signals to him by Core and Kelley not to move the engine. His statement that he had been signaled to move east was directly contradicted by Core, who testified, that the signal given the engineer was to move the train west, not east, and in effect by Kelley, who testified: "We were going west until we got on the switch, then going east again." Moreover, it appeared from the testimony that it was the duty of the engineer to look for signals, and, further, that, if he looked, he must have seen the signals Core and Kelley gave him to stop the engine. The jury were not bound to believe the engineer, but had a right to conclude from the fact that he had an interest in the controversy, and, from other circumstances shown by the testimony, that he saw the signals and ignored them. Knights of Maccabees v. Johnson, 143 S. W. 718; Railway Co. v. Tinon, 117 S. W. 936.

[4] It is further insisted that it appeared from the evidence that the deceased in going and remaining between the cars as he did was guilty of contributory negligence, and therefore that the verdict of the jury was contrary to the evidence. We do not think it so appeared. The jury had a right to say that the deceased, when he reached the place of the accident and saw the part of the train to which the engine was attached standing still and Core and Kelley between the cars endeavoring to replace the drawhead, might very well have concluded, exercising proper care, that the engineer had been signaled not to move his engine and would obey the signal.

[5] It is further insisted that the verdict is excessive. It appeared that the deceased at the time of his death was 57 years old; that his life expectancy was 15½ years; that he was receiving a salary of $3,000 per annum; that he was a widower; that Mrs. Howard, a child then 10 years old, and a son then 27 years old, were his only children; that he was devoted to his daughter; and that he was a man of fine character and most exemplary habits. We do not think, in view of those facts, it should be held that the verdict was excessive.

Assignments presenting other objections than those discussed to the judgment are overruled, because we do not think any of them shows error requiring a reversal of the judgment.

The judgment is affirmed.

