**COBB BRICK CO. v. LINDSAY. (No. 6813.)***

(Court of Civil Appeals of Texas. Austin. May 27, 1925. On Motion for Rehearing Oct. 14, 1925. Further Rehearing Denied Nov. 25, 1925.)

**1. Death ⊚⟹9—Statute valid as applied to corporation.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4694, subd. 2, permitting recovery for death by wrongful act, held valid as applied to corporation.

[Ed. Note.—For other definitions, see Words' and Phrases, First and Second Series, Proximate Cause.]

**2. Negligence ⊚⟹140 — Instruction defining "proximate cause" held not erroneous as requiring highest degree of care.**

An instruction that, for a negligent act or omission to be "proximate cause" of injury, facts must be such that at time of such act it might reasonably have been foreseen in light of attending circumstances that injury would result, was not objectionable as imposing highest degree of care upon defendant to avoid the accident.

**3. Trial ⊚⟹252(8)—Special charge unsupported by evidence held properly refused.**

In an action for damages for personal injuries, where testimony of driver of truck showed that he had made a short turn at crossroads before seeing deceased approaching on his motorcycle, it was not error to refuse a special charge as to legal right of truck driver to cut corner in order to avoid a collision.

**4. Negligence ⊚⟹136(2)—Province of jury to determine negligence from facts submitted.**

Province of jury is to determine, from facts and circumstances in each particular case, whether acts complained of constitute negligence, as that term is defined to them.

**5. Trial ⊚⟹352(5)—Issue not objectionable as assuming existence of legal duty.**

In action for damages for personal injuries in collision at crossroads, whether driver of defendant's truck guilty of negligence in failing to signal his intention to turn was for jury, and therefore an issue whether driver gave a visible signal was not objectionable as assuming the existence of a legal duty to do so; it appearing that other issues whether failure to signal was negligence and proximate cause of injury were given.

**6. Municipal corporations ⊚⟹705(1)—Duty of operators of trucks on street stated.**

Private corporation that puts in operation upon public streets a powerful truck, capable of inflicting serious injuries, is under obligation to others having equal rights to use of public streets to exercise ordinary care in giving signals or warnings as to direction the truck intends to move, so as to give others an opportunity to protect themselves against its movements, and failure to do this is negligence.

**7. Trial ⊚⟹350(6)—Evidence held to warrant issue whether driver of truck kept a proper lookout for approaching vehicles or persons.**

In an action for personal injuries sustained in collision between defendant's truck and motorcycle of deceased, evidence held sufficient to warrant an issue as to whether driver of truck used ordinary care to keep proper lookout for approaching persons or vehicles.

**8. Municipal corporations ⊚⟹706(4)—Evidence regarding former negligent acts of deceased not admissible.**

In action for death from injuries sustained in collision, where contributory negligence of deceased was alleged, evidence by deceased's father that his son was fast rider, and that he had warned him about riding too fast, was inadmissible.

**9. Trial ⊚⟹118—Remarks by counsel not erroneous as informing the jury of the effect of their findings.**

In a personal injury action by wife of deceased, remarks by counsel for plaintiff that, if deceased lost his life as a result of defendant's negligence, plaintiff was entitled to pay under law, were not erroneous as informing jury of affect of their findings upon negligence, since

referring to no specific issue and not giving jury any new information.

**10. Death ⚖️99(4)—$15,250 for death of husband held not excessive.**

In action for death of mail carrier earning $185 a month, and with a life expectancy of 41.53 years, a verdict of $15,250 for wife with a life expectancy of 40.85 years was not excessive.

### On Motion for Rehearing.

**11. Appeal and error ⚖️87(3)—Defendant cannot complain that father of deceased was not made party to suit.**

In wife's action for husband's death, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4694, where record disclosed that deceased's father was a witness, and defendant filed no plea or motion requesting joinder of father to suit, and offered no evidence that he claimed an interest, and raised the question for the first time on motion for rehearing, defendant cannot complain that the father was not made party.

**12. Death ⚖️42—Father of deceased held unnecessary party.**

Where petition for damages for death by wrongful act alleges, and proof shows, that father of deceased has no interest in the suit, no useful purpose can be subserved by making him party.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Mrs. Clara C. Lindsay against Cobb Brick Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Massingill & Belew, Wm. J. Berne, and Thompson, Barwise & Wharton, all of Fort Worth, for appellant.

R. E. Rouer and Gillis A. Johnson, both of Fort Worth, for appellee.

BLAIR, J. Appellee, Mrs. Clara C. Lindsay, surviving widow of William Landon Lindsay, sued appellant, a private corporation, to recover damages sustained by reason of her said husband's being killed as a result of injuries received in a collision between a motorcycle on which he was riding and an automobile truck being used by appellant in the pursuit of its business.

A jury trial was had upon special issues, and upon their findings and the undisputed evidence the trial court rendered judgment for $15,250, consisting of two items—$250, the value of the motorcycle destroyed in the collision, and $15,000 damages suffered by reason of the death of appellee's husband. The appeal is from this judgment.

The collision occurred at the intersection of North Fifteenth street and Lee avenue, in the city of Fort Worth. Appellee alleged the following grounds of negligence on the part of appellant: (a) That during the time immediately approaching the intersection of the streets, appellant, its agents, servants, and employés failed to give any signal or warning of its intention to turn at the intersection of said streets, but did suddenly turn its said automobile truck to the left on Lee avenue without giving any warning whatsoever. (b) That appellant, its agents, servants, and employés, in approaching said street intersection, carelessly and negligently failed to keep a proper lookout to see that the way was clear before making a turn there. (c) That appellant, its agents, servants, and employés, carelessly and negligently cut the corner at the street intersection, in that it failed to pass to the right of and beyond the center of the intersecting street before turning the truck to the left. (d) That appellant carelessly and negligently operated its vehicle, in that it failed to keep a proper lookout for approaching vehicles, failed to sound any signal or warning before making a turn at the street intersection, and failed to indicate its intention to turn at the street intersection.

Appellant's answer consisted of a general demurrer and several special exceptions, which were overruled, a general denial, and a plea of contributory negligence.

[1] Appellant's first two propositions complain of the action of the trial court in overruling its general demurrer and in refusing to peremptorily instruct a verdict for it. By these two propositions appellant raises the constitutionality of subdivision 2 of article 4694 of Revised Statutes, as amended in 1913, which provides that an action for actual damages on account of injuries resulting in death may be brought—

"2nd. When the death of any person is caused by the wrongful act, neglect, unskillfulness or default of another person or corporation, their agents or servants."

As applied to natural persons, this particular act has been declared to be unconstitutional. In the recent case of Sid Westheimer Co. v. Piner, 263 S. W. 578, Section A of the Commission of Appeals held the act in question valid as applied to corporations, regardless of its invalidity as applied to natural persons. Since appellant here is a corporation, this decision conclusively decides these two propositions against it.

[2] The third proposition is that the court erred in defining proximate cause as follows:

"Proximate cause, as used in this charge, means the efficient cause without which the injury in question would not have occurred, and, in order for a negligent act or omission to constitute the proximate cause of an injury, the facts must be such that at the time of the negligent act or omission in question it might reasonably have been foreseen in the light of the attending circumstances that such negligent act or omission would result in the said injury or some similar injury."

Appellant frankly concedes that the Supreme Court has approved this definition, but

contends that proper care and precaution has not been exercised in defining this important term. The gist of appellant's contention seems to be that, in applying the definition to the questions to which it related, the jury could have fairly taken the position that appellant's truck driver was required to exercise the very highest degree of care to have reasonably foreseen from his act or omission alleged that the collision would result, whereas the law only imposed the exercise of ordinary care. We do not find the definition susceptible of such construction, and the proposition is overruled. In the court's definition it uses the following language: "It might reasonably have been foreseen in the light of the attending circumstances." Appellant contends that it should have been "foreseen by a person of ordinary prudence in the light of attending circumstances." Probably appellant's definition is more illuminating; but we see no material difference in the definitions, and we are sure that the one given by the court is not incorrect. In support of that view, see Railway Co. v. Turner (Tex. Civ. App.) 138 S. W. 1126; Freeman v. Swan (Tex. Civ. App.) 143 S. W. 724; Railway Co. v. Byrd, 40 Tex. Civ. App. 315, 89 S. W. 991.

Appellant's fourth proposition predicates error upon the refusal of the court to give its special charge defining proximate cause, which was presented in connection with its objection to the definition given. It follows from what was said in disposing of the third proposition that this one is also overruled.

[3] Appellant's fifth, sixth, and seventh propositions relate to the giving of special issue No. 5, which reads:

"Was it negligence, if any, on the part of the driver of the truck in question to fail to run his truck beyond the center of the intersection of Lee avenue and North Fifteenth street, and to pass to the right thereof before turning his vehicle to the left, if you find from the evidence that he did fail to run beyond the center of said intersection and pass to the right thereof before turning his truck to the left?"

The specific complaint is that the court should have given appellant's special instruction in connection with this issue, informing the jury of the legal right of its truck driver to cut the corner at the left on Lee avenue to avoid an impending collision. We find no evidence in the record that the truck driver made the turn to avoid a collision with appellee's deceased husband. The truck driver testified:

"As I was going west on Fifteenth street, I wanted to turn south on Lee avenue, and my eyes were in front, watching ahead. Just before I approached the street I looked back to see that the rear was clear to make my turn in. As I did so, I began to turn in, and I looked ahead again. I turned in, and I saw this man on the motorcycle just about where the sidewalk would come off into the street ahead of me.

"I was going west up Fifteenth street, and started to look back—I was going to turn south on Lee avenue. I turned my head around to the west, and I saw this man on the motorcycle, and I was just about to the sidewalk on the west line of Lee avenue. That would make him a little bit southwest from me. I had made this turn, and was in the act of turning to the south on Lee avenue. I then looked up and saw him. He was coming due east. At that time I was headed southwest. I was 7 or 8 feet from that southeast corner of the block when I saw him, and was headed southwest."

So, according to the driver's testimony, he did not cut the corner to avoid a collision, and it was not error to refuse the special charge. In fact he positively swears on both direct and cross examination that he had made the turn in question before he saw the motorcycle approaching, and therefore could not have made the cut-in to have avoided a collision with a vehicle which he did not see.

[4, 5] Appellant's eighth and ninth propositions complain that special issue No. 1 assumes the existence of a legal duty of its truck driver to give a visible signal of his intention to turn at the place of the collision. Special issue No. 1 reads:

"Immediately before the accident in question, did the driver of the truck, as he was approaching the crossing of Lee avenue and North Fifteenth street, give any visible signal of his intention to turn and change his said course to the left? Answer 'Yes' or 'No.' "

In connection with special issue No. 1, the court submitted the following issues:

"Was the failure, if any, of the driver of the truck to give a visible signal as he was approaching said crossing, and before making a turn on Lee avenue, if you find that he did fail to give such visible signal, negligence as that term has hereinbefore been defined to you in this charge? Answer 'Yes' or 'No.' "

"Was the failure of the driver of the truck to give a visible signal as he was approaching the intersection of Lee avenue and North Fifteenth street, and before making the turn to the left, if you find that he did fail to give any visible signal, a proximate cause, as that term has hereinbefore been defined, of the accident in question? Answer 'Yes' or 'No.' "

[6] Appellee's cause of action in this respect is based upon the alleged negligence of the truck driver to give warning of his intention to make a turn at the intersection of the streets where the injury occurred. It was also alleged in this connection that the failure to give a signal of intention to turn was violative of article 820k of the state Criminal Statutes. It is clear that the trial judge did not consider the penal law mentioned in submitting these questions, for the reason that, if he had, he would not have submitted the question of whether or not failure to give such visible signal constituted negligence. Appellant recognizes this in its brief, but further contends that the court, in submitting issue No. 1, misconceived the

substantial elements that are embodied in the term "negligence." Negligence was properly defined in the court's instructions to the jury. These questions assume nothing on the part of the court, but seek the findings of the jury whether the truck driver did fail to signal, whether such failure was negligence as that term was defined, and whether such negligence was the proximate cause of the injury. We think no good purpose can be served by entering into a discussion of what constitutes negligence and of the authorities cited by appellant on that subject. The issues and instructions submitted correctly presented the issue of negligence concerning the failure to give a signal or warning that appellant's truck driver was about to make a sudden turn of his machine. The province of the jury is to determine from the facts and circumstances in each particular case whether the acts complained of constitute negligence as that term is defined to them. It was their province in this case to say, under the appropriate definition given, whether or not appellant's truck driver was in fact guilty of negligence in failing to signal or warn others using the streets with him of his intention to turn the powerful machine being operated. It was capable of inflicting death instantly upon human beings that it might strike. It had no greater right to the use of the streets than deceased had with his motorcycle. It was there in pursuance of appellant's business. Deceased was there in pursuance of his business. A private corporation that puts in operation upon the public streets a powerful truck, capable of inflicting serious injury and death, is under obligation to others having equal rights to the use of the public streets to exercise ordinary care in giving signals or warnings as to the direction the truck intends to move, so as to give others an opportunity to protect themselves against its movements, and a failure to do this is negligence. Moss v. Koetter (Tex. Civ. App.) 249 S. W. 259; Flores v. Garcia (Tex. Civ. App.) 226 S. W. 743.

[7] Appellant's tenth proposition is that there was no evidence to warrant the submission of special issue No. 7, which reads:

"Immediately prior to the accident in question, did the driver of the truck of defendant use ordinary care to keep a proper lookout for vehicles and persons approaching him on the highway? By a proper lookout is meant such lookout as a person by the use of ordinary care would keep under the same or similar circumstances."

This is not sustained. The only eyewitness to the collision other than the truck driver was Adrian Finley, who testified:

"The motorcycle was about the middle of the other block in the other direction. That was North Fifteenth street too. He was going east. The two vehicles were approaching each other. The truck it came on up. When I first noticed it, it was on the right side of the street coming up Fifteenth street, but as it neared the corner it cut in, cut to the left into the corner on Lee. The collision occurred on the corner of Lee and Fifteenth street—on the east corner of the intersection of those streets. * * * I saw the truck driver as he was making the turn. He was looking straight ahead. * * * There were street signs over there on the northwest corner of that intersection. * * * The driver was looking straight ahead of him when he came up the street. That was in the direction of that sign. * * * From where the collision took place that sign is northwest."

The testimony of the truck driver, herein quoted under another proposition, shows that he made the turn before he looked in the direction of Lee avenue or the deceased. The truck driver was approaching Lee avenue on North Fifteenth street from the east. Deceased was approaching Lee avenue on North Fifteenth street from the west. The truck driver said he looked back before he made the turn, and when he again looked around deceased was 7 or 8 feet from the southeast corner of North Fifteenth street and Lee avenue, and he was directly in deceased's path or route of movement. This evidence sufficiently raises the issue of whether or not the truck driver used ordinary care to keep a proper lookout for vehicles and persons approaching him on the public streets, and the court correctly submitted it.

Appellant's eleventh and twelfth propositions urge the same questions to special issue No. 7 as propositions 8 and 9 urge to special issue No. 1, and are therefore overruled for the reasons stated in discussing those propositions.

[8] Appellant's thirteenth proposition complains of the court's refusal to permit L. L. Lindsay to testify that his deceased son was a fast rider upon his motorcycle, and that he had warned him about riding too fast. The testimony excluded is as follows:

"My boy worked over there—we worked at the post office. Coming home some times I got on and rode behind him, and down to the post office. That is where I warned him. He says, 'Papa, I am not going more than 18 miles an hour.' I said, 'That is faster than I want to ride behind you.' I says, 'Be careful.' "

Appellant contends that having pleaded contributory negligence of deceased in riding his motorcycle at a high and excessive rate of speed, and the proof showing that it was being operated at the time from 15 to 35 miles per hour, the evidence offered was admissible. We do not sustain this proposition. The particular act of negligence charged in the instant case against the deceased was that he was operating his motorcycle at a high and excessive rate of speed. The jury found that he was operating it at only 20 miles per hour at the time of the accident. The testimony offered showed nothing further than that the father thought

18 miles per hour when he was riding behind his son on the motorcycle was too fast, and that he warned him to be careful. This does not establish habitual negligence. If it did, it would not be admissible in this particular case. Where the only issue involved is whether a deceased was guilty of contributory negligence in doing or failing to do a particular thing, evidence that he was guilty of similar acts of negligence or habitual negligence upon similar occasions is inadmissible.

In the case of Railway Co. v. Johnson, 92 Tex. 380, 48 S. W. 568, Judge Gaines said:

"We think the rule is well settled that when the question is whether or not a person has been negligent in doing or in failure to do a particular act, evidence is not admissible to show that he has been guilty of a similar act of negligence or even habitually negligent upon a similar occasion. Railway v. Converse, 139 U. S. 469 [11 S. Ct. 569, 35 L. Ed. 213]; Tenney v. Tuttle, 1 Allen [Mass.] 185; Glass v. Railway, 94 Ala. 581 [10 So. 215]; Guggenheim v. Railway, 66 Mich. 150 [33 N. W. 161]; Warner v. Railway, 44 N. Y. 465; Railway v. Colvin, 32 Am. and Eng. Ry. Cases (Pa.) 160; Elevator Co. v. Neal, 65 Md. 438 [5 A. 338]; Railway v. Kendrick, 40 Miss. 374 [90 Am. Dec. 332]; Chase v. Railway, 77 Me. 62 [52 Am. Rep. 744]; Hays v. Millar, 77 Pa. 238 [18 Am. Rep. 445]; Gahagan v. Railway, 1 Allen [Mass.] 187 [79 Am. Dec. 724]; Railway v. Robbins, 43 Kan. 145 [23 P. 113]; Towle v. Imp. Co. [98 Cal. 342] 33 P. 207; Building Co. v. Klein [5 Colo. App. 348] 38 P. 608.

"In Tenney v. Tuttle, above cited, the court say: 'When the precise act or omission of a defendant is proved, the question whether it is actionable negligence is to be decided by the character of that act or omission, and not by the character for care and caution that the defendant may sustain.' The principle has been frequently recognized and sometimes applied in this court. Railway v. Evansich, 61 Tex. 3; Railway v. Scott, 68 Tex. 694 [5 S. W. 501]; Railway v. Rowland, 82 Tex. 166 [18 S. W. 96]; Cunningham v. Railway, 88 Tex. 534 [31 S. W. 629]."

The authority 22 C. J. 744, states the rule in section 835:

"The general rule is that the law will not consider evidence that a person has done a certain act at a particular time as probative of a contention that he has done a similar act at another time. Accordingly, it cannot be shown, as bearing on the question of negligence on a particular occasion, that the person whose conduct is involved has met with a number of similar accidents or has been guilty of negligence on other occasions, especially where such other occurrences are remote in point of time; and, conversely, one cannot show that he was careful on a particular occasion by evidence that he was careful and prudent on other occasions. So also, one vice or moral dereliction cannot be proved as a circumstance to show the existence of another not necessarily or vitally connected with it as cause or effect. It is even clearer that a person cannot be shown to have done an act by evidence that another person has done a similar act, although both persons are under the control of a single management."

See, also, authorities cited in footnote of the text.

The case of Cunningham v. Railway Co., 88 Tex. 534, 31 S. W. 629, is cited by appellant, but that case is not authority for the proposition contended for here. The pleadings and evidence in that case involved competency of the railroad company's car inspector, whose act of carelessness caused the injury, and the court said:

"The question here is the existence or nonexistence of a mental condition or quality of the servant, inattentiveness or thoughtlessness, rendering him incompetent, such incompetency being direct evidence on the main issue in the case."

In addition to the authorities of Railway Co. v. Johnson, supra, and C. J., supra, the following Texas authorities sustain our view on this question: Railway Co. v. Parrott, 43 Tex. Civ. App. 325, 94 S. W. 1135, 96 S. W. 950; Electric Co. v. Park (Tex. Civ. App.) 135 S. W. 229; Railway Co. v. Ives, 31 Tex. Civ. App. 272, 71 S. W. 772; Blevins v. Electric Co. (Tex. Civ. App.) 235 S. W. 987; Railway Co. v. Gillespie, 48 Tex. Civ. App. 56, 106 S. W. 707.

The fourteenth proposition is that the court erred in refusing to permit R. M. Erwin to testify. The exact question here raised was decided against appellant's contention in Railway Co. v. Pingenot (Tex. Civ. App.) 142 S. W. 93, as follows:

"Neither is the thirteenth assignment of error well taken. The witness whose testimony was rejected had violated the rule under which the witnesses had been placed, and it was within the discretion of the court to exclude the testimony. The action of the trial judge in such instances will not be revised except in a clear case of abuse of the discretion."

[9] The fifteenth proposition complains of the following argument of counsel for appellee, as informing the jury of the effect of their findings upon negligence:

"Now, gentlemen of the jury, if William Landon Lindsay lost his life as a result of negligence on the part of Cobb Brick Company, Mrs. Lindsay is entitled to pay under the law."

The argument referred to no specific issue, and certainly gave the jury no information which they did not already know. Under the test laid down in the following cases, the argument is not error. Ware v. Jones (Tex. Com. App.) 242 S. W. 1022; Brown v. Perez, 89 Tex. 282, 34 S. W. 725; Paschal v. Owen, 77 Tex. 583, 14 S. W. 203; G., H. & S. A. Ry. Co. v. Duelm (Tex. Civ. App.) 23 S. W. 596; and Studebaker Bros. v. Kitts (Tex. Civ. App.) 152 S. W. 465.

[10] The sixteenth proposition complains of the excessiveness of the jury's verdict.

According to the mortality table introduced, deceased had a life expectancy of 41.53 years, being only 21 years of age at the time of his death. He was a regular mail carrier, earning $150 per month, and $35 per month for working in a grocery store after hours of his regular employment. He was strong, healthy, and robust. He was ambitious, and was open for promotion. He contributed practically all he made to his wife. Her life expectancy was 40.85 years, according to the mortality table introduced. In view of these facts, we do not think the verdict excessive. Tex. & Pac. R. Co. v. Howard (Tex. Civ. App.) 200 S. W. 1159; Marshall & E. T. R. Co. v. Riden (Tex. Civ. App.) 194 S. W. 1163; Southern Pac. Co. v. Vaughn (Tex. Civ. App.) 165 S. W. 885; Freeman v. McElroy (Tex. Civ. App.) 126 S. W. 657.

We find no error in the judgment, and it will be affirmed.

Affirmed.

### On Motion for Rehearing.

This suit was instituted under title 70, articles 4694 to 4704a, commonly known as the death statute. On May 27, 1925, we affirmed the judgment of the trial court. Thereafter, and for the first time at any stage of the proceedings in the case, appellant filed a motion suggesting fundamental error apparent of record, in that, at the time of the death of appellee's husband, which was alleged to have been caused by the wrongful act of appellant, and at the time of the trial of the case, the deceased's father was living and was not made a party to the suit, nor was the suit brought for his use and benefit.

Although the matter was raised for the first time as stated, appellee filed no reply or contest of the motion, and made no suggestion why the statutory provision should not prevail, requiring a father to be made a party to a suit of this character. We sustained the motion July 1, 1925, and reversed and remanded the cause.

[11] Appellee now files a motion for a rehearing, suggesting that she alleged and proved that the father had no interest in the suit, and was therefore not a necessary party to it. A careful examination of the record convinces us that this motion should be sustained. The Supreme Court and the several Courts of Civil Appeals have by numerous decisions held that a parent is a beneficiary of the damages claimed under the provisions of the death statute, and a necessary party to a suit to recover them, and that, where it appears from the record that a parent is not made a party, the judgment cannot stand; the error going to the very foundation of the action. Railway Co. v. Culberson, 68 Tex. 664, 5 S. W. 820; Railway Co. v. Moore, 49 Tex. 31, 30 Am. Rep. 98; Railway Co. v. LeGierse, 51 Tex. 189; Railway Co. v. Mertink, 101 Tex. 165, 105 S. W. 485.

[12] An equally well established rule to the one requiring that a father, having a statutory interest by reason of the wrongful act, be made a party to the suit for damages, is one holding that where the petition for such damages alleges, and the proof shows, that he has no interest in the suit, no useful purpose can be subserved by making him a party. Tex. Central Ry. Co. v. Frazier (Tex. Civ. App.) 34 S. W. 664; Industrial Cotton Oil Co. v. Lial (Tex. Civ. App.) 164 S. W. 40; Railway Co. v. Henry, 75 Tex. 220, 12 S. W. 828; Railway Co. v. Taylor, 5 Tex. Civ. App. 668, 24 S. W. 975; Railway Co. v. Younger, 10 Tex. Civ. App. 141, 29 S. W. 948.

In this case appellee sued for damages for her sole, exclusive, and personal benefit. The record discloses that the father of her deceased husband was present at the trial and testified in the case. Appellee did not sue in her name, for his use and benefit. Her petition alleged the following:

"That prior to and at the time of his death he was for a long time engaged in business, and did thereby earn and receive therefrom the sum of $200 per month, and that he was in line for promotion, and could and would have continued to earn the same and more during the period of his natural life; that he has since his marriage cared for and supported his family, consisting of this plaintiff, and has contributed to her support all of his above earnings, with the exception of his bare necessities of life, and would have continued to contribute to the support of this plaintiff the same or more during his natural life."

Her testimony in support of this allegation is:

"Outside of his own personal expenses and what he contributed to me in the conduct of our home, that was all of his expense. He was not an extravagant man. He was industrious. He worked all the time we were married. In his contributions to me Mr. Lindsay was kind. He bought my clothing. He did not spend a good deal of his salary on his own personal needs. He did not contribute to anybody's support, except my own. I was entirely dependent on him for support. I am living with my father in Dallas. I was not working while I was married to Mr. Lindsay, but have gone back to work since his death."

M. M. Lindsay, a witness for appellee, testified:

"He cared for his wife out of his earnings and supported her. He was a good provider, within his means, for his wife. After he married, he put most of his earnings into conducting his home."

The record discloses that the deceased's father was a witness for the appellant. Appellant made no inquiry concerning his interest, if any, in the suit, or whether the deceased contributed anything to his support. The widow testified that the deceased "did not contribute to anybody's support except my

own." The record further discloses that the cause was tried in the court below at the November term, A. D. 1922; that it had been tried once before this, at probably the May term, A. D. 1922, of the same court; and that the father was a witness at the first trial of the case.

Appellant filed no plea or motion requesting the joinder of the father to the suit, nor did it offer any evidence that he was claiming an interest. In no way did appellant suggest a nonjoinder of parties, either by a plea to that effect, or by motion in arrest of judgment or for a new trial, or by any bill of exception or assignment of error, but raised the question for the first time as above stated. Under these facts, we are of the opinion that appellant is in no position to now complain that the father was not made a party to the suit. The case comes clearly within the rule announced in the case last above cited; also within the rule announced in Railway Co. v. Spiker, 59 Tex. 435, and Railway Co. v. Wilson, 85 Tex. 516, 22 S. W. 578, in which latter case the Supreme Court said:

"In the case at bar the fact that the widow and children of deceased were not parties was directly called to defendant's attention, for it is therein shown that they have no interest in the suit. How, then, can it be said that the verdict of the jury was affected by the idea that it was to be brought for the benefit of all those provided for by statute? If the defendant desired them made parties, it became its duty to plead it in some way. The Spiker Case, supra, says that, if the mother had settled her claim, that should have been shown, and the judgment could then stand. The assignment is overruled."

The motion of appellee will be granted. The opinion on appellant's motion filed July 1, 1925, is hereby withdrawn. Our opinions affirming the case, May 27, 1925, and on this motion, shall constitute the judgment of this court.