**MOSS v. KOETTER et al.   (No. 6884.)\***

(Court of Civil Appeals of Texas. San Antonio. Feb. 14, 1923. Rehearing Denied March 14, 1923.)

**1. Municipal corporations ⟨⟩706(5)—Evidence held to warrant finding of negligence in driving automobile and due care by person attempting to board street car.**

Evidence that defendant drove an automobile at an excessive rate of speed close to the center parkway in the street, and passed a street car which was stopping to receive passengers, without looking toward the parkway to see if any one was there waiting to board the car, and struck plaintiff's intestate, who was in the street near the curb of the parkway waiting for the car, *held* to warrant finding that defendant was negligent and plaintiff's intestate was not negligent.

**2. Trial ⟨⟩352(4)—Special issue unsupported by testimony was properly refused.**

A special issue requested by defendant as to whether plaintiff's intestate stepped off the parkway in front of defendant's automobile was properly refused, where there was no testimony tending to show that fact.

**3. Municipal corporations ⟨⟩705(10)—Pedestrians have right to use street to board street cars without looking and listening for approaching automobiles.**

A pedestrian, while lawfully waiting for a street car, has as much right to occupy the street as an automobile driver and owes no duty to look and listen for an approaching automobile while so doing.

**4. Municipal corporations ⟨⟩705(10) — Not negligence per se for pedestrian to use portion of street devoted to vehicles.**

Pedestrians are not confined to the use of the sidewalks or footpaths provided for them, and it is not negligence per se for them to use parts of streets devoted to vehicles.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused May 2, 1923.

**5. Municipal corporations ⚖️705(1)—Failure of automobile driver to look for pedestrians waiting for street car held inexcusable.**

The failure of the driver of an automobile, who was passing a street car which he knew was stopping to receive passengers, to look at the side of the street along which he was traveling for persons leaving the center parkway to board the street car, is not excused by the fact that he was looking in the other direction to see if any vehicles or pedestrians were there.

**6. Municipal corporations ⚖️705(1) — Both statutes and ordinary care require automobile driver to stop and give warning when street car has stopped to receive or discharge passengers.**

Both under Vernon's Ann. Pen. Code Supp. 1922, art. 820k, subds. L and M, and under his duty to exercise ordinary care, the driver of an automobile, who is approaching from behind a street car which is stopping to receive or discharge passengers, is required to stop his automobile and to give warning of his presence.

**7. Municipal corporations ⚖️705(5)—Exceeding statutory speed limit is negligence per se.**

It is negligence per se for the driver of an automobile to exceed the statutory rate of speed, and, if such speed was a proximate cause of the death of a pedestrian struck by him, he is liable in damages for such death.

**8. Trial ⚖️351(5)—Requested special issues covered by those already given can be refused.**

It was not error to refuse special issues requested by defendant, where, in so far as they were appropriate, they had been already given by the court, and every material phase of the case was submitted by the court.

**9. Trial ⚖️352(5)—Special issue held not to assume signals should have been given.**

In an action for the death of a pedestrian struck by an automobile, a special issue as to whether defendant failed to sound his bell or give other signal as a warning of danger did not assume that such signals should have been given.

**10. Witnesses ⚖️383—Discrepancies in testimony as to distance witness walked after stepping from curb held immaterial.**

Where plaintiff had testified that he and his wife had stepped off from the curb and walked to where they intended to take a street car when his wife was struck by defendant's automobile, the discrepancy between different statements that they had walked 50 feet and 100 feet after leaving the curb was immaterial.

**11. Depositions ⚖️95—After part is offered, adverse party can introduce whole deposition.**

After defendant offered in evidence a part of a deposition, it was proper to allow plaintiffs to introduce the whole deposition.

**12. Statutes ⚖️143—Invalidity of amending act leaves former provision in force.**

Even if the amendment of Rev. St. art. 4694, by Act April 7, 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4694), so as to permit recovery of damages for death wrongfully caused by defendant's agents or servants is invalid, the provision of Rev. St. 1895, art. 3017, authorizing recovery for death wrongfully caused by defendant remains in force, so that in any event a defendant is liable for death wrongfully caused by his own negligent act.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by A. F. Koetter and others against R. E. Moss. Judgment for plaintiffs, and defendant appeals. Affirmed.

Cobbs, Blankenbecker & Wiggin, of San Antonio, for appellant.

Norton & Brown, of San Antonio, for appellees.

FLY, C. J. This is a suit for damages arising out of the death of Mrs. Rose P. Koetter, the wife of A. F. Koetter, and the mother of Keene Koetter and Jane Koetter, minors; the suit having been instituted by A. F. Koetter, for himself, and as the father and next friend of the minors against the appellant, in which it was alleged that appellant ran an automobile over and against Mrs. Koetter, thereby destroying her life. The cause was submitted to a jury on special issues, in response to which it was found by the jury that at the time of the accident appellant was operating his car at a speed exceeding 25 miles an hour, that such excessive speed was the proximate cause of the death of Mrs. Koetter, that the territory contiguous to the place of the accident was closely built up, and the automobile was operated at a higher rate of speed than 18 miles an hour; that the operation of the car was at a rate of speed which was negligence and was the proximate cause of the accident; that appellant did not have his automobile under control, which was negligence and was the proximate cause of the accident; that Mrs. Koetter was preparing to board a street car when struck, and it was negligence not to stop the automobile; that appellant failed to give any signal of his approach and did not keep a proper lookout; that Mrs. Koetter did not step off the parkway in front of the approaching automobile and was not guilty of contributory negligence. The jury fixed the damages at $4,500 in favor of A. F. Koetter and $1,500 in favor of each of the minors, and the court rendered judgment for the sums and parties indicated, amounting in the aggregate to $7,500. The cause was submitted by the court on 30 issues, and to these appellant sought to add 44 more issues. Every issue in the case could have been covered in 10 or 12 questions to the jury.

[1] The facts in this case justify the conclusions that A. F. Koetter, his wife and daughter, intended to board a street car on its way into the city, at the crossing of Post and River avenues, and the street car slowed for the stop before reaching Post avenue.

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(249 S.W.)

where the three persons had assembled. This was the usual stopping place for passengers. River avenue has a parking in the middle of it, and there are two railway tracks, and the cars go out of the city north towards Alamo Heights on the east track and return to the city on the west track. The parking has curbs on both sides. The driveway for automobiles and other vehicles going north is on the east of the parking and the railway tracks, and the incoming driveway is on the west side of the parking and tracks. At the time that Mrs. Koetter was struck by the automobile of appellant, they were standing near the curbing of the parking on its west side, being the east side of the driveway for incoming vehicles. The incoming street car was stopping for the three persons to board the car, and just before it stopped the conductor, who was at the rear end, looked back and saw the lights of an approaching automobile 40 or 50 feet back of the car, and it passed the car running at the rate of 30 to 35 miles an hour, not less than 30 miles, and he heard some one scream. He opened the car door and jumped off before the car stopped. There was but one car on the street at that time, and that was the one driven by appellant which struck Mrs. Koetter and knocked her down. Appellant drove in a circle across the driveway beyond Post avenue which crossed River avenue beyond where Mrs. Koetter was struck. The car went over a hundred feet and struck the curbing on the opposite side of the driveway before it was stopped. The impact with the woman or the curbing of the parkway, or both, snapped one of the front spindles of the automobile, and one of the front wheels flew off before appellant reached the west curbing of the street. The street car had bright lights on it and the automobile had bright lights, and appellant testified that he had seen persons at the stopping place about a block before he got to it, but did not see Mrs. Koetter before he struck her, because he was watching the west side of the street for an automobile coming along Post avenue or for people crossing the street to the street car from a bench prepared for passengers on the west side of the street. Passengers waiting for cars could seat themselves west across the street from the parkway and wait for street cars. Mr. and Mrs. Koetter had crossed the street from the east side to the curbing of the parkway. Appellant was driving on the east side of the driveway next to the curbing where the street car stopped for passengers. The Koetters were on their way to the city. They lived on the east side of River avenue, and the husband and wife crossed the east driveway and the parking to the west driveway; but the daughter, after getting on the parking, remained there. They saw the street car coming toward them and all moved down towards the stopping

place in order to board the car. The reason given for walking along the curb in the street was that Koetter and his wife thought it safer, as the street cars at times left the tracks, and there was nothing in the street and it was frequently used by people to get the cars. No warning or signal was given of the approach of the automobile. Appellant had a high-powered automobile, and he swore that he was "an extremely fast driver." While the west driveway in River avenue is reserved for vehicles going into the city of San Antonio and all parts can be used for that purpose, still, while the driveway was free of all vehicles, appellant chose to run his automobile at a high rate of speed close to the curb of the parking where Koetter and wife were standing in a broad glare of light waiting for the street car, and while looking towards the west or his right struck and gave death wounds to Mrs. Koetter. The evidence fully sustains the answers of the jury to the special issues both as to the negligence of appellant and no contributory negligence on the part of appellee. Even if Koetter and deceased should not have been on the paving near the curbing of the parkway, still appellant cannot justify his negligence in not keeping a lookout on the side of the street on which he was running and running at an unlawful rate of speed close to a curbing where he knew people would probably be seeking to board street cars. These conclusions dispose of the second, third, fourth, fifth, sixth, eighth, and thirteenth assignments of error adversely to the claims of appellant.

[2, 3] There was no testimony tending to show that Mr. and Mrs. Koetter stepped off the parkway in front of appellant's automobile, and the court properly refused to interpolate that issue in the case. This disposes of the eighteenth, nineteenth, twentieth, twenty-first, and twenty-second assignments of error. Koetter and wife had as much right in the street at the time and place as appellant had, and no duty devolved upon them to look and listen for approaching automobiles under the circumstances. While lawfully waiting for a street car which was near them, they had the right to assume that no one driving an automobile would drive right along the curb, in a bright light, and run over them. Pedestrians have rights on the streets equal in all respects to those owning and operating automobiles, and they have the right to use the streets to reach street cars on which they desire to embark. The duty of ordinary care is required of the automobile driver in the street, and, as said by this court in Street Railway v. Renken, 15 Tex. Civ. App. 229, 38 S. W. 829.

"They [that is, street cars and other vehicles] stand upon the same footing, and in regard to each of them the test of their duty and liability to others using the streets is the exer-

cise of ordinary care—such care as a man of ordinary prudence would exercise under like circumstances."

[4] Pedestrians are not confined to the use of sidewalks or footpaths provided for them, and it is not negligence per se for them to use parts of streets devoted to vehicles. Often absolute necessity requires the use of them by pedestrians, and when they do use them they are only required to use ordinary care as does the vehicle. Their duties are reciprocal. A pedestrian struck by an automobile is not guilty of contributory negligence merely because he was standing or walking on the street. In the case of Kathmeyer v. Mehl (N. J. Sup.) 60 Atl. 40, the facts showed that the plaintiff, when struck by an automobile, was standing out in the street conversing with a friend on a wagon, and the Supreme Court of New Jersey said:

"We see nothing negligent in the plaintiff's action. Certainly he had no reason to suppose that, merely because he was standing in the roadway, he would be run down by the recklessness of the driver of an automobile. He was lawfully there, and any person using the highway was bound to take notice of him, and to use care not to injure him, and the plaintiff had a right to assume that this would be done."

[5] According to the evidence of appellant himself, the street was well lighted where the woman was struck and he could have seen her if he had looked on the side of the street on which he was driving. He says he was moving at the rate of about 15 miles an hour, and, if that be true, it merely increases his culpability in not seeing the woman and her husband, and it would have been easier to have avoided a collision than if he had been driving very rapidly. But he did not look on the side of the street where his automobile was running, but was watching for something across the street which offered no justification for his negligence. He could have seen Mrs. Koetter if he had looked, but he did not look, and he struck and injured her so that she languished and died.

[6, 7] It is contended that there is no law requiring a full stop on River avenue when a street car has been stopped to receive or discharge passengers or to give warning of approach, and no law requiring appellant to have his automobile, when approaching a street car stopped for such purposes, under control. It is provided in article 820 K, Vernon's Sayles' 1922 Supp. Civ. and Crim. Stats., that the driver or operator of any vehicle in or upon any public highway in this state shall drive or operate such vehicle in a careful manner with due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon such highway, and wherever practicable shall travel upon the right-hand side of such highway. In subdivision L of the same article it is provided that when passing a street car stopped for

the purpose of receiving or discharging passengers, the operator of an automobile shall bring his vehicle to a full stop until the passengers have been received and discharged. In subdivision M it is provided that where a curvature of the road prevents a clear view for a distance ahead of 100 yards, the driver shall hold his motor vehicle under control and shall give a warning by his gong or other adequate signaling device. The provisions of this law evidently cover this case; but, if they do not, a just regard for the rights of others and a due sense of the sacredness of human life would dictate the use of such means to conserve the safety of men and women. Undoubtedly, under the testimony of the conductor of the street car and others, appellant was violating the speed laws of Texas when the victim was struck, and was keeping no outlook for others on the street where he was running his motor vehicle. Exceeding the statutory rate of speed was negligence per se, and if it was a proximate cause, as we think it was, of the death of Mrs. Koetter, damages were properly assessed. Carvel v. Kusel (Tex. Civ. App.) 205 S. W. 941; Flores v. Garcia (Tex. Civ. App.) 226 S. W. 743. A man driving an automobile at the rate of 30 miles an hour and not looking in front of him could undoubtedly be said not to have control of his vehicle. All of the assignments up to and including the sixteenth are overruled.

[8] None of the issues requested by appellant should have been given, as in so far as any of them were appropriate they were given by the court. Every material phase of the case was submitted by the court, and there were a number of issues which with perfect propriety might have been omitted. Assignments of error from 17 to 23, inclusive, are overruled.

[9] There is no assumption in issue 13 that a signal should have been given by appellant before running over the deceased, although under the circumstances reason and a due regard for human life would seem to have dictated it. The question was merely:

"On approaching the place of the accident, did defendant Moss fail to sound his bell or give other signal as a warning of danger?"

The twenty-fourth assignment of error is overruled, as well as assignment 25, relating to the same matter.

There was no testimony raising any such issues as those sought to be introduced through special issues requested by appellant, and assignments of error 26, 27, 28, and 29 are overruled. So far as applicable, the matters contained in the special issues requested were given. No one testified that Koetter and wife stepped off the parkway near where she was struck, but that it was at least 100 feet north of the place of the accident to where they crossed and left the parkway.

[10] A. F. Koetter swore that he had walked about 100 feet on the pavement along the curb, and it was utterly immaterial that he may have stated at another time that he had walked 50 feet. However, no written statement was produced of what A. F. Koetter had stated. The questions asked Koetter were immaterial and could have no influence on the case. No one claimed that Mrs. Koetter stepped off the parkway in front of the automobile or anywhere near it. Appellant made no such claim in his testimony.

[11] Appellant offered in evidence a part of a deposition of E. H. Maddox, and it was then proper to allow appellees to introduce the whole deposition. The admission of the whole statement could not have injured appellant. The court gave the proper measure of damages under Texas law. There was no necessity for any further charges on the subject.

[12] Point 1 under the first assigment of error is:

"At the time of the accident there was no constitutional law that provided for survival of the cause of action against an individual for negligently causing the death of another."

The accident occurred on October 23, 1920, and the proposition advanced is based on a decision in the case of Rodgers v. Tobias (Tex. Civ. App.) 225 S. W. 804, which holds that the law passed on April 7, 1913 (Gen. Laws, p. 288; Vernon's Sayles' Ann. Civ. St. 1914, art. 4694), amending article 4694, is unconstitutional in whole or in part, which is not quite clear from the opinion, because it contains more than one subject, while only one is expressed in the title. The article intended to be amended provided, among other things, that individuals, and corporations other than common carriers, should be liable for their wrongful acts causing the death of any person, but not providing for such wrongful act by their servants or agents, and it had been held by the Supreme Court and other appellate courts that the old statute did not apply to the wrongful acts of the servants and agents of any one except the corporations specially mentioned in the law. National Bank v. Hanks, 104 Tex. 320, 137 S. W. 1120, Ann. Cas. 1914B, 368; Shippers Co. v. Davidson, 35 Tex. Civ. App. 574, 80 S. W. 1030. The amendment of 1913 seems to have been passed to meet this omission in the statute.

The law as it was prior to the amendment enacted that an action for actual damages, on account of injuries causing death of any person in certain cases, made no provision for deaths caused by the negligence of the servants of any corporations except those connected with the conveyance of passengers and goods and made no provision for recovery of damages for the negligence of the servants of individuals unless connected with transportation of passengers and goods. The second section of the old law was:

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another."

The section as amended in 1913 is:

"2. When the death of any person is caused by the wrongful act, neglect, unskillfulness or default of another person or corporation, their agents or servants."

In other words, the extent of the amendment was to add "person or corporation, their agents or servants."

If the case of Rodgers v. Tobias, herein cited, is correct in holding that the amendment of 1913 was unconstitutional and void, then this case would fall under the provisions of the law as embodied in article 3017, Revised Statutes of Texas of 1895, and appellant would be held liable thereunder for negligence of which he was guilty. In the case of Rodgers v. Tobias the suit was based on the negligence of servants of an individual, and after holding that the amendment of 1913 was void, of course, it was held that the individual was not liable for damages arising from the death of a person caused by the servants of the individual. The decision can have no effect upon a proper decision of this case. Shippers Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032.

In one portion of the opinion in the Rodgers v. Tobias Case, it is held, it seems, that the whole amendment is void, but in another part the decision seems to hold:

"That the second provision in article 4694, amended in 1913 (Laws 1913, c. 143), which undertakes to visit upon natural persons responsibility for deaths caused by the wrongful act, neglect, unskillfulness, or default of their agents or servants, is clearly unconstitutional."

However, whether the whole of the act of 1913 be unconstitutional or only the second provision, it would not affect this case, because the old law still exists, and appellant can be held liable under that as individuals have often been held liable.

The facts clearly show that if appellant had brought his automobile to a stop or had slowed down on approaching the street car which he knew was stopping for passengers, or if he had kept a proper outlook for persons at a point where he had every reason to know they would be, or if he had not been running too near the curbing at a reckless rate of speed, the probabilities are he would not have struck Mrs. Koetter. There is no evidence of prejudice upon the part of the jury, although such cases are calculated to excite prejudice against all users of automobiles. As said by the Court of Appeals of Kentucky in Gregory v. Slaughter, 124 Ky. 345, 99 S. W. 247, 8 L. R. A. (N. S.) 1228, 124 Am. St. Rep. 402, an automobile case:

"The owners of automobiles have the same right on public highways as the owners of other vehicles; but, when one drives so dangerous a machine through the public thoroughfares, it is incumbent upon him to exercise corresponding care that the safety of the traveling public is not endangered thereby. When the owners of automobiles learn this, it is confidently believed that whatever prejudice may now exist against them in the public mind will entirely disappear, for the public is not usually prejudiced without cause."

Automobiles have no paramount right to the highways of the country or the streets of a city, and when operating an automobile along such highways and streets a due regard for the rights of other riding or walking demands the utmost caution and circumspection. If a direct statute does not command a slowing down or a stop or the giving of a warning at a place dangerous for pedestrians, or a vigilant outlook, the mandate of the golden rule and the call of humanitarian feelings would enjoin their practice upon every driver of an automobile on the streets of a city or town. However, we think the statute law with its penalties and application of force demands the performance of such plain, reasonable duties.

The judgment is affirmed.