ORCHIN et al. v. FORT WORTH POULTRY & EGG CO. et al.

No. 10869.

Court of Civil Appeals of Texas. Dallas.

Oct. 17, 1931.

Rehearing Denied Nov. 28, 1931.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellants.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, and Sidney Samuels, of Fort Worth, for appellees.

JONES, C. J.

This is a suit instituted in a district court of Dallas county by appellants, Mrs. Eunice Orchin, a widow, in her individual capacity, and as next friend of her minor daughter, Dorothy Orchin, against the Fort Worth Poultry & Egg Company and Armour & Co., to recover damages for the alleged wrongful death of her husband, Joe Orchin, who was an employee of the Gulf Refining Company. This company carried compensation insurance with the Indemnity Insurance Company of North America, and the insurance company intervened, on the ground that it had partly paid and was obligated to pay to appellants $20 per week for 360 weeks, under the compensation insurance and should be reimbursed by appellee for the amount paid and to be paid. A judgment resulted in favor of appellees, and appellants have perfected an appeal. The indemnity company did not appeal. Appellants dismissed their suit against Armour & Co., and the issues on this appeal are between appellants and appellee, the Fort Worth Poultry & Egg Company.

Joe Orchin, deceased, at the time of his death, was employed as a lubrication engineer by the Gulf Refining Company, at a salary of $315 per month. On October 5, 1928, deceased was traveling in a Ford coupé from Dallas to Fort Worth, and when about seven miles out from Dallas, just beyond the village of Arcadia, his car collided with a Dallas-bound truck owned by appellee and operated by J. E. Scott. From this collision, deceased received injuries which resulted in his death. At the place of the collision, the paved portion of the highway was 20 feet in width, and on each side of the pavement there was a ditch about five feet from the pavement. Before the collision, one T. W. Saverance, who was traveling from Fort Worth to Dallas in a model T Ford touring car, had parked his car on his right side of the highway, the outside wheels being just off of the pavement, in order to do some repairing on his engine. This highway at the place of the collision extended practically east and west, and to those going towards Fort Worth the south side of the highway was to the left, and the opposite was true of those going towards Dallas. When the truck Scott was driving approached Saverance's parked car, it turned to the north in order to pass the car, and swerved to the left or north side of the highway. At this time, deceased was approaching the Saverance car on the north or right side of the highway, going towards Fort Worth. The truck and coupé collided east of the Saverance car; the evidence being sharply contradictory as to the distance from said car. The collision occurred on the north side of the highway. The left front wheel of the truck was broken, and the left front fender broken and driven back. The left hind wheel of the coupé was destroyed, and the fender from about midway on the left side of the car was destroyed, and the left door and the left rear side of the car badly battered. The evidence is conflicting as to whether the truck had turned to the south or right side of the highway at the time the collision occurred. The evidence is also in sharp conflict as to the speed of both the coupé and the truck at the time of the collision, except that they were each in excess of 15 miles per hour. No statement was made by deceased, for he was unconscious during all of the times described by the witnesses, and consequently the only eye witnesses to the accident were Saverance and Scott, the driver of the truck, though several witnesses heard the collision, and at once went to the scene of the accident.

The petition alleged the various grounds of negligence submitted to the jury by the court in the form of special issues, and the pleading of appellee alleged the various defensive matters, submitted to the jury in special issues.

The court correctly defined negligence, proximate cause, and certain terms used in these definitions. The findings of the jury material to this review, paraphrased, are as follows: (1) The truck was not driven by Scott on the occasion in question at a rate of speed in excess of thirty-five miles per hour. (3) J. E. Scott operated the truck upon the left-hand side of the highway at a time when the left-hand side of the highway was not clear and unobstructed for a distance of at least fifty yards ahead. (4) Such act on the part of Scott was a proximate cause of deceased's injury. (5) J. E. Scott, in attempting to pass deceased's automobile, failed to give him at least one-half of the highway. (6) Such failure on the part of Scott was a proximate cause of deceased's injury. (7) J. E. Scott failed to slow down to a speed of 15 miles per hour at the time he attempted to pass deceased's automobile. (8) Such failure was not a proximate cause of deceased's injury. (9) J. E. Scott went to the left-hand side of the highway in attempting to pass the automobile of Saverance without leaving sufficient space to his left on such highway for the deceased's car to pass in safety. (10) Such act was negligence, and (11) a proximate cause of deceased's injury. (12) J. E. Scott, in approaching the automobile owned by Saverance, swerved suddenly from behind said automobile to the left-hand side of the highway without giving any signal or warning to automobiles, approaching from the opposite direction, of his intention to do so. (13) Such failure of Scott was not negligence, nor (14) a proximate cause of deceased's injury. (15) and (16) Submit issue of discovered peril which is found against appellant. (18) Deceased failed to slow down his car to 15 miles per hour in attempting to pass Scott's truck. (18a) Such failure on the part of deceased proximately contributed to and caused his injury. (19) Just prior to the collision,

deceased operated his automobile at a rate of speed in excess of 35 miles per hour. (20) Such act on the part of deceased proximately contributed to his injury. (21) At the time of the collision deceased was not operating his automobile at a rate of speed in excess of 35 miles per hour. (23) Prior to the time of the collision, deceased exercised reasonable care to keep his car under control. (25) At the time of the collision, deceased exercised reasonable care to keep his car under control. (27) Deceased did not attempt to pass Scott's truck prior to the time said truck had completed passing beyond the Saverance car. (30) Just prior to the collision, deceased did not operate his car on his left-hand side of the highway. (32) Just prior to the collision, deceased exercised ordinary care to keep a reasonable lookout for the traffic on the road ahead of him. (34) Just prior to the time of the collision, deceased applied the brakes to his car, and (35) exercised ordinary care for his own safety in applying the brakes. (37) Deceased's injury was not the result of an unavoidable accident. (38) An ordinarily prudent person, in the position in which deceased was approaching the scene of accident, could have seen the situation of the said truck in time to have avoided the collision.

The contentions of appellants, based on proper assignments of error, are: (1) The court erred in entering any judgment except that of a mistrial in the case, because of contradictory findings by the jury; (2) error in the admission of certain evidence, and error in a refusal to admit certain evidence; (3) error by the court in commenting on the demeanor of a witness in reference to evidence elicited by appellants; (4) inflammatory and prejudicial argument by counsel for appellees. The nature and grounds of these contentions will appear from the discussion of the case.

Our Penal Code, article 794, prohibits all operators of motor vehicles from passing each other on a public highway at a greater rate of speed than 15 miles per hour, and prescribes a fine for its violation. Subdivision (A) of article 801 directs each driver of a vehicle upon a public highway to travel upon the right-hand side of the highway, unless the road on the left-hand side of such highway is clear and unobstructed for a distance of at least 50 yards ahead. Subdivision (B) of such article declares that vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other one-half of the road as nearly as possible. Subdivision (C) of such article declares that vehicles overtaking other vehicles, proceeding in the same direction, shall pass to the left thereof, and shall not again drive to the right until the road is reasonably clear of such overtaken vehicle. Subdivision (F) of such article declares that it is the duty of the person operating or in charge of an overtaking vehicle to sound audible and suitable signals before passing a vehicle proceeding in the same direction. Violation of each of these sections is made a misdemeanor, punishable by fine. If the operator of a vehicle on a public highway violates any one of the above statutes, he is guilty of negligence per se in the operation of the vehicle.

The findings of the jury on issues Nos. 3 and 4, also on issues Nos. 5 and 6, and also on issues Nos. 9, 10, and 11, are affirmative findings in favor of appellants, and require a judgment in favor of appellants, unless their legal effect is nullified by findings in favor of appellee.

In response to issue No. 18, the jury found as a fact that deceased failed to slow down his car to a speed of 15 miles per hour in attempting to pass the truck driven by Scott, and further found, in response to issue No. 18a, that such failure on the part of deceased proximately contributed to and caused his injury. The effect of this finding is that deceased violated a provision of article 794 of the Penal Code, which required him to slow down to a speed not greater than 15 miles per hour. The violation of this statute on the part of deceased constituted negligence, and, when the jury found that this negligence proximately contributed to his injury, it thereby nullified the legal effect of the three separate acts of negligence, found to have been committed by Scott, and each found to be a proximate cause of deceased's injury. It is elementary that no recovery can be had for an injury inflicted by a wrongful act, if such injury was proximately contributed to by the wrongful act of the one receiving the injury.

Appellants do not question this proposition of law, but contend that these findings in favor of appellee are contradictory of the finding on special issue No. 23, to the effect, that prior to the time of the collision deceased exercised reasonable care to keep his car under control; also, contradictory of the finding on special issue No. 25, to the effect, that at the time of the collision deceased exercised reasonable care to keep his car under control; and also contradictory of finding No. 32, to the effect, that just prior to the collision deceased exercised ordinary care to keep a reasonable lookout for traffic on the road ahead of him. In other words, appellants contend that if deceased, both prior to and at the time of the collision, exercised reasonable care to keep his car under control, and exercised ordinary care to keep a reasonable lookout for traffic ahead of him, he could not have been guilty of any negligence that proximately contributed to his injury.

In making this contention, we believe that appellants have overlooked the fact that, in legal effect, it is the fiat of statutory law that, if any person, operating a vehicle on a highway, attempts to pass another vehicle, being

operated in the opposite direction, at a greater rate of speed than 15 miles per hour, such person is guilty of negligence. By this enactment, the Legislature has taken it beyond the scope of judicial inquiry and forbids a jury to find that, under a condition to which the statute applies, the driver of an automobile, operating it at a greater rate of speed than 15 miles per hour, is not guilty of negligence. If deceased's car, when he was attempting to pass appellee's truck, had been operated within the speed allowed by law, it would then have been a material inquiry as to whether such speed was negligence, in view of all the circumstances of the case; but when operated at a rate of speed in excess of 15 miles per hour, such greater speed becomes negligence, as a matter of law. The same reasoning applies to the contention of appellants as to the findings of the jury in respect to special issues Nos. 19 and 20. All assignments of error in this respect are overruled.

■■ Error is assigned on the court's admission of certain testimony of appellee's witness, John Collier. Collier was appellee's manager, and was at the scene of the accident on the afternoon it occurred and on the following morning. W. C. Murray, a fellow employee with deceased of the Gulf Refining Company, was also at the scene on said occasions. Murray was a witness for appellants, and gave material evidence in their favor on disputed issues of material facts. While Murray was on the stand, on cross-examination he was asked by appellee's counsel if he did not state to Collier that the deceased was one of the Gulf Refining Company's fastest drivers, and the witness denied making any such statement. In its rebuttal testimony, over a timely objection by appellant, Collier was permitted to testify that Murray told him on the afternoon of the accident that the deceased was a very fast driver.

This evidence clearly was not admissible for any purpose. As to whether the deceased was generally a fast driver is not relevant testimony on the issue as to what speed he was driving his automobile on the occasion in question, under the issues made by the pleading in the case. It would not have been relevant testimony to have shown that the deceased on other occasions violated the statutory speed limit, or habitually violated such speed limit, or was guilty of negligence in any other manner of his driving. When appellee asked the question of the witness Murray as to his said statement to Collier, it was on an immaterial issue; the answer could not be made a predicate for impeachment. It is elementary that a witness cannot be impeached by showing that he made a contradictory statement on an immaterial issue. The issues in this case were sharply contested. The speed and the location of deceased's car must be determined by the jury on disputed testimony, and we cannot say that the

jury was not influenced by this testimony. Then again, appellants had the right to have the material evidence given by Murray to go to the jury without being weakened by the admission of hearsay testimony, tending to disparage the standing of the witness. We think the admission of this testimony constituted reversible error under the circumstances of this case. Cobb Brick Co. v. Lindsey (Tex. Civ. App.) 277 S. W. 1107; Railway Co. v. Johnson, 92 Tex. 380, 48 S. W. 568; Prewitt v. Southwestern T. & T. Co., 46 Tex. Civ. App. 123, 101 S. W. 812; T. & N. O. Ry. Co. v. Marshall, 57 Tex. Civ. App. 538, 122 S. W. 946.

■■ Error is assigned on the argument to the jury of one of appellee's attorneys. As shown by the court's qualification of the bill of exception, this argument purported to be an answer to the opening argument made by one of appellants' attorneys. Said attorney, after discussing appellants' evidence as to the position of the truck just after the collision, said: "What does Mr. Scott say about that? The collision occurred 75 or 80 feet in front of the Saverance car. Gentlemen, the physical facts don't bear him out in that statement nor does any other witness bear him out in that statement, and consider the interest Mr. Scott has in this litigation—driving the truck—employed by the defendant—the sustenance of that man is dependent upon his holding his job." Then near the close of his argument, he said: "From the testimony of the witness Murray and R. B. Bland it appears that Scott first made the statement that he tried to pass around Saverance's car and hit the Ford—later after due deliberation Scott changed that testimony; did it in an attempt to free himself from any negligence in the case whatsoever. Why did he do that? For the benefit of his employer. He knew that his job probably depended upon—his welfare depended upon keeping his job. Naturally interested. Working for his employer and his employer is interested."

Purportedly answering this argument, the attorney for appellee made the following argument to the jury: "Now they say that we did not bring but two witnesses here,—this truck driver Scott and Mr. Collier. They tell you that Scott is not worthy of belief. Why? Because he is working for a corporation and that his corporation will probably fire him and kick him out of his bread and butter if he (Scott) did not come here and perjure himself. Gentlemen, that is an old 'wheeze'; that was gotten up before juries learned, years ago, when they charged railroads first with doing things of that kind. It was not true then and is not true now. You (pointing to J. C. Kennedy) are the head of a corporation. Do you, or would you, contemplate such a thing as that for a moment? You (pointing to Geo. A. Mills) work for a corporation. Do you want them to come on

the witness stand and have people say that you are a liar and perjurer because a corporation will take your bread away from you if you don't tell the truth? You (pointing to G. T. McNeil) work for the Western Union. Do they do that way? You (pointing to R. G. Blythe) work for a corporation. Do they do that way? You (pointing to C. V. Montgomery) also work for a corporation, and I guess some of the others do, too. You (pointing to E. C. Vance) work out at the cement plant. Now, gentlemen, do they do that? Is not that an insult to your intelligence to tell you that Mr. Scott is not worthy of belief—that he perjured himself to save his bread and butter. That is an attack on a man you should not believe for a minute because it will come home to you—sure as anything in this world. Just get on the stand and tell the truth as you see it—so help you God—and let some lawyer say you are not worthy of belief because you work for a corporation and that your employer will kick you out if you don't tell a lie under oath. That will not do."

This argument was not objected to at the time, but was assigned as error in the motion for a new trial. The grounds of objection stated in the assignment of error are that it "was highly prejudicial to the plaintiffs, was not in response to any argument made by the plaintiffs' counsel, was calculated to inflame the minds of the jury, was done for the purpose of prejudicing the jury in favor of the defendant corporation, and was an attempt on the part of the defendant's counsel to coerce the jury, inasmuch as counsel threatened the jury that if they believed such a thing it would come home to them."

We are of the opinion that this assignment of error presents reversible error. The argument proceeded on the basis that appellants' counsel had charged that an employee of a corporation had to swear in the interest of the corporation or he would lose his position. As shown by the court's qualification, opposing counsel did not make such an argument. The record shows that two witnesses testified that the witness Scott had made a certain statement to Murray shortly after the accident, in some respects in harmony with appellants' theory, on a material issue in this case. The record shows also that the next morning, according to the witness Murray, Scott went to him and changed the statement, in harmony with his testimony given on the witness stand. The argument of appellants' counsel was, in effect, a mere stating of his deductions as to the conduct of the witness Scott in changing his first statement, and was no charge against corporations generally. It thus appears that the argument of counsel for appellant was either based on testimony in the case, or was a deduction that counsel drew from such testimony, was consequently legitimate argument, and formed no basis for the argument of appellee's counsel. Then again, it is highly improper for an attorney to single out a juror and personally appeal to him, especially when such an appeal carries with it the idea that, because of the nature of his employment, an attack has been made upon the integrity of such juror. It was the plain duty of the court, without the necessity of an objection, to at once interrupt counsel and stop the argument. We sustain this assignment of error. District and County Court Rules Nos. 39 and 41; Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W. (2d) 435, 436, writ of error dismissed, 31 S.W. (2d) 630; Nicholson v. Nicholson (Tex. Civ. App.) 22 S.W.(2d) 514; Davis v. Hill (Tex. Civ. App.) 271 S. W. 281; Blohm v. Krueger (Tex. Civ. App.) 297 S. W. 596; St. L. S. W. Ry. Co. v. Boyd, 40 Tex. Civ. App. 93, 88 S. W. 509; Stark v. Brown (Tex. Civ. App.) 193 S. W. 716; G., H. & S. A. Ry. Co. v. Cooper, 70 Tex. 67, 8 S. W. 68, 69; Koch v. Haller (Tex. Civ. App.) 237 S. W. 329; H. & T. C. Ry. Co. v. Long (Tex. Civ. App.) 219 S. W. 212.

We have examined all other assignments of error, and, while some of them perhaps show error, they are all of such a nature as will not likely occur again, and not such errors as would ordinarily call for the reversal of a case. The other assignments of error not discussed we do not believe present reversible error. For reasons above stated, this cause is reversed and remanded for another trial.

Reversed and remanded.