## MARX v. LEVERKUHN et al.
### No. 9937.

Court of Civil Appeals of Texas. Galveston.
April 30, 1934.

First Dissenting Opinion May 2, 1934.

Rehearing Denied July 19, 1934.

King, Wood & Morrow, of Houston, for appellant.

Fulbright, Crooker & Freeman, of Houston (M. C. Chiles and Lester Settegast, both of Houston, of counsel), for appellees.

GRAVES, Justice.

This appeal is from a judgment refusing the motion of appellant for a recovery—and instead granting one to the appellees—upon the verdict of a jury on special issues in a trial, wherein the appellant sought of the appellee Leverkuhn and his insurance carrier damages for personal injuries received by him in a collision between his automobile and Leverkuhn's truck and trailer, alleged by him .to have been caused by the negligence of the latter; the findings in material substance being as follows:

It was determined, first, under special issues 1 to 6, inclusive, that Leverkuhn negligently operated his truck and trailer at the time and on the occasion in question in the following particulars, each of which was a proximate cause of the collision: (1) Without having any headlights or other lights thereon to give notice and warning to others using the highway and traveling in the opposite direction; (2) with the truck and trailer, or a portion thereof, extending beyond and to his left of the center of the highway.

Second, under special issue 7, that the collision was not the result of an unavoidable accident.

Third, under special issues 8 and 9, inclusive, that there were at the time and place of the collision Atkins-Line trucks parked on the right-hand side of the road going toward Goose Creek, but there was left a width of at least 15 feet of clear and unobstructed space on the main highway opposite them, and they were not so parked as that a clear view of them could not be obtained from a distance of 200 feet in either direction on the highway.

Fourth, issues 13 and 14, together with the answers thereto, in his verbis, were:

"Special Issue No. 13: Do you find from a preponderance of the evidence that J. H. Marx, the driver of the Pontiac automobile involved in the collision in question, upon approaching the point where the accident occurred, in undertaking to pass defendant Leverkuhn's truck, failed to slow down the

speed of said Pontiac automobile to fifteen miles per hour?

"We do.

"Special Issue No. 14: If you have answered special issue No. 13 'we do,' and only in that event, then answer:

"Do you find from a preponderance of the evidence that such failure of J. H. Marx was a proximate cause as that term has been defined for you herein, of the injuries and damage, if any, complained about by him?

"We do."

Fifth, under special issues 15 to 27, inclusive, appellant Marx was expressly acquitted of negligence in each of the following particulars: (1) In not failing to keep a lookout ahead of his automobile for other motor vehicles on the public highway upon which he was traveling; (2) in not failing at the time and on the occasion in question to have his motor vehicle under control; (3) in not having driven his motor vehicle at the time and on the occasion in question at an excessive rate of speed; (4) in not having operated and driven his automobile at the time and on the occasion in question at a rate of speed reasonably calculated to endanger the safety of any property located at the point where the collision occurred; (5) in not having failed to operate and drive his automobile at the time and on the occasion in question upon his right-hand side of the middle of the public highway upon which he was traveling.

And, sixth, under special issue 28, that $7,000 would be a fair and adequate compensation for the injuries alleged and proven to have been received by the appellant Marx on the occasion in question, taking into consideration the elements of damage specified in the court's charge.

There were no other fact issues either requested or submitted, nor was the judgment rested upon any; its recitations showing the contrary. Further, neither side has attacked any of the quoted answers as lacking support in the evidence.

 The court's action, therefore, in so entering judgment in favor of the appellee Leverkuhn solely on this verdict—thus complete within its four corners, notwithstanding the fact that, on the one hand, it fastens negligence in the specified particulars upon Leverkuhn, and on the other frees Marx of any at all, unless the mere failure to reduce to 15 miles in undertaking to pass, vel non, constitutes such—is based exclusively on the view that these answers to issues 13 and 14, as a matter of law, established contributory negligence on his part and barred any recovery by Marx.

That conclusion cannot be sustained, for the outstanding reason, among others, that, while it proceeds solely from an application of erstwhile Pen. Code, art. 794, to the facts otherwise assumed to have attended this collision, it ignores entirely the question of whether or not Marx, in time to have slowed down to 15 miles per hour before the actual impact, knew, or reasonably should have known that Leverkuhn's truck was there at all at the time. By the mutual concession of both parties the evidence was conflicting upon this feature; Marx on his side in the only direct testimony affecting it saying he did not see the truck until just as he hit it, too late to avoid doing so, while on the adverse side some inconclusive circumstances tending to indicate that he had, or in the exercise of due care should have, seen it in time were adduced.

By the pleadings also such advance knowledge, actual or imputed, was in legal effect, at least, denied for his part by Marx in general averments from which that was a legitimate inference, and affirmed in turn by Leverkuhn in traversing merely with a general demurrer.

None of the quoted findings of the jury, either directly or by necessary inference, determine whether or not Marx so saw or should have seen the truck, or knew or should have known of its presence; nor can any finding that he did see or know of it, or should have, be deemed to have been made by the trial court in such manner as to support the judgment under R. S. article 2190, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ. St. art. 2190), because, aside from the express recitation in the decree that it was founded alone upon the verdict on the inquiries that were submitted (Barnett v. Williams [Tex. Civ. App.] 242 S. W. 348), that matter constituted an independent and complete ground of defense, pleaded and relied upon as such by the appellee, hence was susceptible of a waiver by him. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

 With such an actual hiatus thus showing up in the verdict, it is thought to have furnished no proper basis for a judgment in favor of either party, since—without its further appearing (actually or presumptively) that appellant in advance neither knew nor was charged with knowledge of the truck's presence in time to have slowed down to 15 miles—he on the one hand was not entitled to mature the recovery the findings oth-

erwise accorded him, nor on the other could the appellee deprive him entirely of those gains. In other words, his mere ultimate attempt to pass—in the circumstances otherwise found and undisputedly appearing, that is, it being at night, with him on the right side of the road and his lights burning, while the truck was on the wrong side without lights—at a greater speed than 15 miles, in the absence of such added element as to his knowledge or the lack of it, could neither constitute contributory negligence as a matter of law (Pennington Co. v. Wonn [Tex. Civ. App.] 49 S.W.(2d) 482, writ refused) nor be a proximate cause of the collision under the definition of the latter term in the court's charge. This was, further, as just indicated, defensive matter to appellant's suit, going as it did solely to whether or not he was guilty of contributory negligence, the whole injection of Pen. Code, art. 794, being indeed of that character—hence appellant did not for his part waive it by not himself requesting the submission thereof to the jury, that being incumbent upon his opponent in making out the defense he so plead and relied on. Ormsby v. Ratcliffe, supra; Federal Surety Co. v. Smith (Tex. Com. App.) 41 S. W.(2d) 210; McCoy v. Long (Tex. Com. App.) 15 S.W.(2d) 234.

■ That appellant must have had such actual or imputed knowledge of the truck's presence in time to have so slowed down to constitute his act a violation of this penal statute seems to have—by clear analogy at least—been the effect of the holding of our highest criminal court in Stalling v. State, 90 Tex. Cr. R. 310, 234 S. W. 914; that is, the act itself presupposes the existence of such advance knowledge as an inhering and constituent element of the offense thereby denounced, without the presence of which there is no infraction of the law. See also People v. Fodera, 33 Cal. App. 8, 164 P. 22.

■ While that statute is no longer a part of the criminal jurisprudence of the state, having been repealed outright subsequent both to the happening of this collision and the rendition of judgment herein, under this emergency clause: "Sec. 2. In view of the fact that the Supreme Court of the State of Texas, has held on several occasions that the speed of forty-five (45) miles an hour is a legal rate in Texas, thereby making this statute inoperative and useless and the further fact that this statute is never recognized and failure to observe one law creates disrespect for all laws, creates an emergency and an imperative public necessity, that the Consti-tutional Rule requiring bills to be read on three several days in each House be suspended, and the same is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted" (Gen. Laws, 43d Leg., 1933, Reg. Sess., c. 56, p. 112), still, it is apprehended, it should be applied to this occurrence because in force at that time.

■■ So that, the submission of all special issues made by the pleadings and proof—as was the one of whether appellant so knew the car he undertook to pass was there—being affirmatively enjoined on the court by cited article 2190, notwithstanding there was no specific request therefor from either side (Speer's Law of Special Issues in Texas, chapter 7, paragraph 149, and cited cases), and that not having been done, since in th circumstances shown the court itself was without authority to fill the "aching void" thus left, a mistrial should have been entered.

For a further reason also a reversal must be ordered: The evidence on motion for new trial showed: (1) That individual statements of his own were made by the juror Wingate in the presence and hearing of other members while the jury was deliberating upon its verdict, contrary to the evidence adduced on the trial, to the effect that he was more familiar with the road than the other jurors and some of the witnesses' who testified; that he had traveled the road frequently since that time and had worked in highway work; and that the road was straighter than the witnesses testified that it was. (2) That it is at least reasonably doubtful as to whether one or more jurors—particularly Messrs. Hill and Tanner, the former admitting reliance on these statements, the latter being uncertain about it—were wrongfully influenced by this improper conduct in rendering their verdict in answer to special issue No. 14, supra; wherefore the judgment should be set aside. Lincoln v. Stone (Tex. Com. App.) 59 S.W.(2d) 100, opinion expressly approved by the Supreme Court; Casstevens v. T. & P. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 73 A. L. R. 89; Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; St. Louis S. Ry. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; St. Louis, S. F. & T. Ry. Co. v. Rutland (Tex. Com. App.) 292 S. W. 182, 183; Elizondo v. Regan (Tex. Com. App.) 55 S.W.(2d) 540, opinion expressly approved by the Supreme Court.

Reversed and remanded, with Justice LANE dissenting.

LANE, Justice (dissenting).

On the 30th day of April, 1934, the majority of this court filed an opinion in this cause reversing the judgment rendered for Leverkuhn, the defendant in the trial court, and remanding the cause.

Being of opinion that the majority erred in ordering a reversal of said judgment and in not affirming same, I respectfully enter my dissent to the order of the majority.

That appellant Marx, plaintiff in the trial court, was, on the 16th day of June, 1930, driving an automobile on a public highway westward from the city of Goose Creek to Houston; that he met an autotruck being driven by appellee Leverkuhn in the opposite direction; that he undertook to pass the truck driven by Leverkuhn at a rate of speed of 25 or 30 miles an hour; and that such speed was not reduced until he caused his automobile to collide with the truck driven by Leverkuhn—are facts undisputed.

Marx instituted this suit against Leverkuhn to recover damages which he alleged he suffered by reason of said collision, alleging that the collision resulted by reason of various acts of negligence of Leverkuhn.

Appellee Leverkuhn pleaded, among other things, that appellant was at the time of the collision traveling at a high and dangerous rate of speed and failed to slow down his automobile to 15 miles per hour while attempting to pass the truck driven by Leverkuhn, and that in such failure he violated the provisions of article 794 of our Penal Code, and thereby contributed to bring about the collision and the damages alleged by Marx.

Appellant Marx did not plead any excuse or justification for the violation of article 794 of our Penal Code.

It may be conceded that the verbiage of article 794 of our Penal Code implies that want of knowledge of an approaching car, after the exercise of reasonable care to discover it, would excuse one for passing it at a rate of speed of more than 15 miles per hour. But in such case, when, as in the present case, the evidence leaves the question as to whether or not the party undertaking to pass at the time saw the car he was about to pass at a rate of speed in excess of that prescribed by article 794 of our Penal Code, such question is one for the jury or judge trying the case to determine.

There is an abundance of evidence which would justify a finding that appellant Marx did see the truck he was about to pass in time for him to have slowed down his car to 15 miles per hour before colliding with the truck of Leverkuhn. He concededly undertook to pass the truck at a rate of speed of 25 or 30 miles per hour. If appellant saw the truck as he attempted to pass it, he violated the provisions of said article 794, and under the decisions of our courts was guilty of negligence as a matter of law. St. Louis, B. & M. Ry. Co. v. Price (Tex. Com. App.) 269 S. W. 422, 432; Carvel v. Kusel (Tex. Civ. App.) 205 S. W. 941; Flores v. Garcia (Tex. Civ. App.) 226 S. W. 743; Moss v. Koetter (Tex. Civ. App.) 249 S. W. 259; Orchin v. Fort Worth P. & E. Co. (Tex. Civ. App.) 43 S.W. (2d) 308, 310; Pennington Produce Co. v. Wonn (Tex. Civ. App.) 49 S.W.(2d) 482.

In the Orchin Case, above cited, it is said: "In response to issue No. 18, the jury found as a fact that deceased failed to slow down his car to a speed of 15 miles per hour in attempting to pass the truck driven by Scott, and further found, in response to issue No. 18a, that such failure on the part of deceased proximately contributed to and caused his injury. The effect of this finding is that deceased violated a provision of article 794 of the Penal Code, which required him to slow down to a speed not greater than 15 miles per hour. The violation of this statute on the part of deceased constituted negligence, and, when the jury found that this negligence proximately contributed to his injury, it thereby nullified the legal effect of the three separate acts of negligence, found to have been committed by Scott, and each found to be a proximate cause of deceased's injury."

In the present case, in answer to special issues 13 and 14 submitted, the jury found from a preponderance of the evidence that appellant Marx, upon approaching and undertaking to pass the truck of Leverkuhn, failed to slow down the speed of his automobile to 15 miles per hour, and that such failure was a proximate cause of the injuries and damage complained of by him.

The violation of article 794 of the Penal Code of this state, requiring automobiles in passing each other traveling in opposite directions on public roads to slow down to 15 miles per hour, is negligence as a matter of law, and when such negligence is a proximate cause of the injuries and damages sued for, the violators of such article cannot recover therefor. In order to excuse or justify such violation of article 794, the party so violating it must plead, prove, and secure a finding of

facts excusing or justifying his violation of that article. And in the event such claimant fails to discharge such burden, he waives his right to rely upon any excuse or justification for his violation of that article of the Penal Code of this state.

Conceding that the evidence would have supported a finding either way, that Marx did or did not see the truck as he attempted to pass it, as he did not request the submission of such issue he waived the same and left it for the determination of the trial judge, and in such case it should be presumed that the judge found that Marx did see the truck in time to slow down his car so as to prevent the collision.

In Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, at page 163, 30 S. W. 902, 905, 28 L. R. A. 538, Judge Denman, speaking for the Supreme Court, said: "When the undisputed evidence adduced on the trial establishes prima facie as a matter of law contributory negligence on the part of plaintiff, then the burden of proof is upon him to show facts from which the jury upon the whole case may find him free from negligence; otherwise the court may instruct a verdict for defendant, there being no issue of fact for the jury. Sanches v. Railway, 88 Tex. 117, 30 S. W. 431, and cases cited; Cassidy v. Angell, 12 R. I. 447 [34 Am. Rep. 690]; Houston & T. C. Railway v. Sympkins, 54 Tex. 618 [38 Am. Rep. 632]."

By article 46 of our Penal Code it is provided as follows: "When the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission."

In West Texas Coaches v. Madi (Tex. Civ. App.) 15 S.W.(2d) 170, 175, after quoting the provisions of article 794 of the Penal Code, it is said:

"Conceding the facts to be that at the time of the collision the appellant's coach was proceeding at a speed in excess of 15 miles per hour, that would clearly make against the appellant a case of negligence per se under the above article, and nothing would remain for the jury to pass upon, except the determination of whether such speed at such time and place proximately caused the death of John Madi. Exceeding the statutory rate of speed upon the highway is unquestionably negligence per se. Moss v. Koetter (Tex. Civ. App.) 249 S. W. 259; Carvel v. Kusel (Tex. Civ. App.) 205 S. W. 941; Flores v. Garcia (Tex. Civ. App.) 226 S. W. 743.

"There is nothing vague or uncertain about this statute, and by its provisions it is negligence per se for the operator of a motor vehicle to pass an approaching one at a rate of speed in excess of 15 miles per hour." See Pennington Produce Co. v. Wonn (Tex. Civ. App.) 49 S.W.(2d) 482, 483.

For the reasons pointed out, I think the judgment of the trial court should be affirmed, and I therefore respectfully dissent from the order of the majority in reversing said judgment.

## On Motion for Rehearing.

LANE, Justice (dissenting).

This court by a majority opinion reversed the judgment of the trial court upon two grounds, one of which was upon the asserted misconduct of the jury.

I dissented generally to the reversal of the judgment, but in my dissenting opinion heretofore filed in this case I inadvertently failed to give my reasons for dissenting from the conclusion of the majority as to the effect of the asserted misconduct of the jury. I shall, therefore, now proceed to give such reasons.

As the misconduct of the jury shown has been fully stated in the majority opinion, it will not be here repeated. My reasons for holding that the asserted misconduct of the jury complained of are so well stated in appellees' motion for rehearing I have substantially adopted the same as my own:

In order for the court to reverse this case upon the question of misconduct of the jury, the misconduct must have influenced the jury in reaching its verdict upon the very point upon which the judgment in the cause was entered. If we concede that there was misconduct, such misconduct could not have affected the determination of the jury as to whether or not appellant Marx saw the truck driven by Leverkuhn in time to have prevented the collision or by the exercise of reasonable care should have seen it—such misconduct from its very nature could not have influenced the finding on any issue, other than the one mentioned, and that issue was not pleaded nor was any request made for its submission to the jury. The appellant waived that issue and left it for the trial court to determine, as I have already shown. In other words, the jury had no such issue to decide, nor did they, by their answers to the special issues submitted, undertake to decide such issue. The jury was asked to find whether or not Marx was driving his car at a greater rate of speed than 15 miles per hour at the time he attempted to pass the Lever-

kuhn truck in violation of article 794 of the Penal Code, and, of course, under the evidence the jury answered such question in the affirmative. The degree of the curve could have had no effect upon the jury's answer to this question and they so testified.

It does not appear that there was any dispute among the jurors as to whether or not appellant failed to slow down the speed of his automobile to 15 miles per hour in attempting to pass the Leverkuhn truck. It does not appear that there was any dispute among the jurors as to whether or not his failure to slow down to 15 miles per hour was a proximate cause of the collision and his injury, for under the undisputed evidence there existed no grounds for such disputes.

In discussing the question of misconduct here, the court has assumed as a fact that there was a dispute among the jurors on the answer to be given by it to the issue upon which the court entered judgment (issues 13 and 14) and that in deciding this issue, the members of the jury were influenced by statements of Juror Wingate as to the degree of the turn of the road where the collision occurred. No such thing occurred, and it is not even contended by appellants that it did occur. The jurors were not reasonably doubtful about whether or not they were influenced by the statements of Juror Wingate, because they each stated that they were not so influenced. The trial court, who heard them testify and saw them on the witness stand, was not reasonably doubtful about it.

For the reasons here stated, and those stated in my former dissenting opinion, I respectfully dissent from the order reversing the judgment in this case.